## RONALD MARVIN GROSS AND JOHN WAGSTAFF, JR. *v.* STATE OF MARYLAND

[No. 162, September Term, 1969.]

*Decided December 12, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Richard S. Kahn* (*Roland Walker* and *Millard Rubenstein* on the brief) for appellant Gross, and *Morris L. Kaplan* for appellant Wagstaff.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Peter D. Ward* and *Luther C. West, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

John Wagstaff, Jr. and Ronald Marvin Gross (appellants) and Charles Arnold Pace, jointly tried, were found guilty at a court trial in the Criminal Court of Baltimore of robbing Frank Seglinski with a deadly weapon. Each appellant questions the admission of a judicial identification of him as one of the robbers by the victim but for different reasons.

Wagstaff contends that "the court was clearly erroneous in relying upon the sole identification of Frank Seglinski." He suggests that the State had available an eyewitness to the crime other than the victim but did not call him. He does not dispute the rule consistently followed by this Court that identification by the victim alone is sufficient to establish criminal agency, *Nance v. State,* 7 Md. App. 433 and *Gunther v. State,* 4 Md. App. 181, but urges that the procedure here followed at trial by which the in-court identification was obtained "tainted and seriously impaired" it. He asserts that just before the identification was made the Assistant State's Attorney asked, "Would the gentlemen on the first bench please state your name for the record?," that defense counsel objected and requested a mistrial and that the court helped the identification when it said, "I thought he was ready to identify right now." The transcript discloses that the circumstances surrounding the identification were not as Wagstaff suggests. Seglinski had reached the point in his testimony where he would testify as to the identity of his assailants. Gross had filed a pretrial motion to suppress any judicial or extra-judicial identification of him. Luther C. West, one of the Assistant State's Attorneys, stated to the court that in view of Gross' motion "the State will break its testimony with Mr. Seglinski at this time prior to going into the question of

identification and ask that I be permitted to recall him at a later time." It was then the court said, "I thought he was ready to identify right now." The transcript then reads:

"MR. WEST: Yes, sir. All right.

Q. Mr. Seglinski, if you see the men in the courtroom that held you up—

THE COURT: Do you see any of the men in court that walked into the tavern?

MR. WALKER (counsel for Gross): The question is objected to, Your Honor.

THE COURT: Overruled.

THE WITNESS: The three men that came into my place now are sitting there on the first bench.

MR. WEST: Would the gentlemen on the first bench please state your name for the record?

MR. KAPLAN (counsel for Wagstaff): Objection to that, if Your Honor please. I move for a mistrial.

THE COURT: What's your reason for a mistrial?

MR. KAPLAN: The State's Attorney is pointing out the defendants.

THE COURT: He said the three men that came in are sitting on the front bench.

MR. KAPLAN: There are a couple of front benches. Three of them to be exact. Wait a minute, I have a motion for a mistrial here.

THE COURT: I don't see any reason for a mistrial.

MR. WARD (Assistant State's Attorney): I think the record should show that there are three front benches in the courtroom. At the time the question came up, and objection was made, on the middle bench

344

was sitting three colored males together with a police officer, Officer Ehrenburg, a jail guard. On the other bench was sitting an elderly white gentleman and the other bench, that was unoccupied.

MR. WALKER: For the record I wish to also join in that objection.

THE COURT: Are you asking for a mistrial Mr. Walker?

MR. WALKER: No. I'm objecting to the question, Your Honor, at this point.

THE COURT: The question you objected to, will you walk over, he didn't complete. What is the question you asked? Mr. Burns you want to object to?

MR. BURNS (counsel for Pace): Yes Your Honor. The question was counsel asked the three people on the front bench to give their names. This is the question that I also object to.

MR. KAPLAN: And pointed to this particular defendant.

THE COURT: Which particular defendant?

MR. KAPLAN: The first one here.

THE COURT: For the record who do you mean?

MR. KAPLAN: I don't know, Your Honor. I'm merely indicating what the Assistant State's Attorney did. He pointed to a gentleman on the front bench. What kind of a suit you got on?

A DEFENDANT: Silk.

MR. KAPLAN: Silk suit with a blue shirt and gray tie.

MR. WALKER: I wish to correct myself. I do move for a mistrial and object. I think it's a dual position.

THE COURT: What's your reason for a mistrial Mr. Walker.

MR. WALKER: I think Mr. Kaplan has a good point, Your Honor. I think if the State—

THE COURT: What is his point?

MR. WALKER: If the State now points of a particular individual, aren't they aiding in identification which is highly prejudicial? I think this must be unaided, unhampered act on the part of a witness and I do believe that where the State picks up prematurely a harmless statement made by a witness and now points to a particular individual and says you give your name for the record, it certainly is a shot in the arm to a witness who may otherwise be encountering difficulty in making an identification.

THE COURT: Gentlemen I think you're making really a great mountain out a small molehill in this connection. The witness said the three men who came in are the ones on the front bench. I think the record indicated that on the front bench are three colored gentlemen and Officer Ehrenburg on the center front bench. On the right front bench as this Court looks at the courtroom is an elderly gentleman, white, white hair. On the left on the front bench is a white gentleman.

MR. WARD: Pardon me. None of these two gentlemen were sitting there at the time. Your Honor.

THE COURT: I see one just walked into the courtroom, also a white gentleman who just sat down. The other one was sitting there. I don't know when he came in. He is a white gentleman. The motions for a mistrial are denied.

> MR. WEST: Your Honor, I think that the record should also show that Mr. Seglinski in answer to Your Honor's question that was addressed to him originally in regard to the identification of the men who came in his bar, he also pointed at the three gentlemen.
>
> THE COURT: He pointed in the general direction of three colored men who were sitting on the front bench as he indicated.
>
> MR. WEST: Yes, sir.
>
> Q. Mr. Seglinski, would you please walk over and put your hand on the shoulders of the three, if you see the men in the courtroom, who entered your tavern on the night at 1:20 A.M., 14th of March, 1968?
>
> MR. WALKER: Objected, Your Honor, for the record. I have a motion pending.
>
> THE COURT: All right. Motion denied. Objection overruled. You do that, Mr. Seglinski."

Seglinski then positively identified each of the three defendants as a participant in the robbery, relating each to the acts performed at the time of the crime as he identified him. We find no reversible error as to the judicial identification of Wagstaff. See *Bailey v. State,* 6 Md. App. 496.

Gross contends that the judicial identification of him was inadmissible as tainted by a pretrial lineup which was illegal. He claims that the lineup was illegal because it was conducted in the absence of counsel representing him, the right to counsel not being effectively waived. He urges that he could not intelligently waive the presence of counsel because he did not know "for what crime he was being investigated."

The identification evidence was properly challenged by a pretrial motion to suppress. Maryland Rule 729; *Smith and Samuels v. State,* 6 Md. App. 59. The motion was de-

termined during the trial on the merits. At the trial it was first brought to light that a lineup had been conducted on cross-examination of Seglinski by counsel for Gross. Thereafter evidence was adduced with respect to the legality of the lineup and it is clear that such evidence as was thereon elicited by the State was not for the purpose of establishing substantive evidence of identity independent of the judicial identification. It is equally clear that it was established that Gross was not represented by counsel at the lineup [1] and that he signed a document affirmatively waiving his right to counsel. At the close of the evidence on the issue the court found that Gross had intelligently waived his right to counsel. The effect of the finding was that the lineup was legally conducted.[2] Thereafter, the State, not content with the judicial identification by Seglinski, introduced evidence through a police officer of the identifications by Seglinski and another eyewitness to the crime of Gross at the lineup as evidence of identity independent of the judicial identification. It was subsequently disclosed that the eyewitness was not present at the trial so as to be subject to cross-examination. Thereupon the court properly struck the evidence as to that extra-judicial identification and made abundantly clear that it would not consider it in arriving at its verdict. See *Smith and Samuels v. State, supra,* at 63-64. But evidence as to the extra-judicial identification by Seglinski remained in and if the lineup was illegal its admission would be error, for it would then be *per se* excludable. And it would be prejudicial error unless we were able to say that it was harmless beyond a reasonable doubt. *Smith and Samuels v. State, supra,* at 65.

*United States v. Wade,* 388 U. S. 218, 237 indicated

---

1. There was evidence sufficient for the court to find, as it did, that Wagstaff and Pace were represented by counsel at the lineup.

2. The thrust of Gross' argument below on the issue and the sole argument presented in his brief on appeal is that he did not intelligently waive his right to the presence of counsel at the lineup. He does not contend that the lineup was otherwise unfair. See Md. Rule 1046 f.

that there could be an "intelligent waiver" to the right to counsel at a lineup, citing *Carnley v. Cochran*, 369 U..S. 506. *Carnley* held that the waiver of the right to counsel must be "intelligently and understandingly" made and adopted the standard of proof as to such waiver laid down in *Johnson v. Zerbst*, 304 U. S. 458, 464-465:

> "While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

The trial court complied with the requirements of *Johnson* and its determination appears upon the record.

> "Insofar as Mr. Gross is concerned this Court was very much impressed with the intelligence of Mr. Gross, a very alert young man who read the exhibit, State's Exhibit No. 4 for identification [the waiver form signed by Gross] which was tendered to him to read. He read it without any difficulty. His answers and the way he conducted himself on the stand impresses the Court and I am completely satisfied that he understood exactly why he was being held. As a matter of fact Officer Johnson testified on cross examination Mr. Gross did read the paper in question. That is partially corroborated by Mr. Gross when he said, he meaning Officer Johnson could have read it aloud, it's possible he didn't hear it. That is what Mr. Gross said. I think the State has met its burden of proof even though Mr. Gross is 16 years old, 17 now, his birthday being July 5th. He impressed the Court as to his complete knowledge of what was going on here and obviously what was going on at the time of his being put in custody. He shows a sophistication frankly far beyond the years that he has."

It admitted the waiver signed by Gross into evidence. The question before us is whether the trial court was, on the evidence before it, clearly erroneous in its judgment that the waiver was proper giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 1086.

The waiver form, signed by Gross and witnessed by three officers read:

"I have been advised by Sgt. Raymond Holden
<u>(NAME AND RANK)</u>
of my Rights and I understand that:
1. I will be required to participate in a police lineup.
2. I have the right to be represented by Counsel at the lineup.
3. I have the right to hire Counsel and the right to have my Counselor notified of the lineup.
4. If I cannot afford to hire Counsel I have the right to have Counsel appointed for me.
5. With full understanding of my rights as stated above, I hereby waive my right to be represented by Counsel during the conduct of a lineup and declare that I am willing to appear in said lineup without counsel."

Officer Richard Johnson, one of the witnesses to the signature of Gross, testified that all three of the defendants "were advised of their rights as to having a lawyer present at the lineup. If they did not have the funds to obtain counsel, counsel would be appointed for them." Pace gave the name of a lawyer and he was contacted. A lawyer appeared at the lineup representing Pace and Wagstaff. "At the station that same morning Ronald Marvin Gross did not wish to have an attorney and he did sign the waiver." On cross-examination Johnson said that Gross at the time was 16 years of age. Sergeant Holden read Gross the rights from the form he signed. "He said he didn't wish an attorney and he went ahead and signed it." Johnson said that in his presence Gross

was not told "that we want you to stand in a lineup because we suspect you of participating in a holdup of a liquor store." But he said, "He was advised of this when he was taken before the desk sergeant. * * * Under the routine he would be."

Gross testified on the issue. He said he was born on 5 July 1951 and had a 7th grade education. Asked: "Did any police officer or other person ever advise you what charge was involved against you or what you were being suspected of?," he replied, "No, sir." He said he was not represented by "any lawyer" at the lineup and denied that any police officer advised him of his rights in connection with the lineup. Shown the waiver form bearing his signature, he claimed he never read it and that it was never read to him. "When I signed it I was under the impression I was signing it to obtain a lawyer. * * * The officer asked me did I have an attorney. I said no. He asked me did I have money to hire one. I said no. He asked me would I like one. I said yes. He said sign it." On cross-examination he was handed the form he signed and read it aloud. He admitted it was his signature. He said it was a "strong possibility" that Sergeant Holden read it to him but perhaps he did not listen. The Sergeant did tell him he was to be in a lineup. He admitted he had no "trouble reading [the waiver form] to the court."

There was also evidence before the court that the crime had been committed about 1:20 A.M. on 14 March 1968. Seglinski, a lawyer and former policeman, was tending bar in a tavern located at 2026 McElderry Street, owned by his wife, when three young men entered and robbed him at gunpoint, stealing about $45 in one dollar bills and $18 in silver.[3] He immediately telephoned the police

---

3. There was evidence that the lighting conditions in the bar "were very good. * * * At this time there was bar lights. There were wall lights, lights that always are on in the business at that time * * * They were neon lights running up and down over the bar." He saw their facial features. "I was a former policeman. I studied these gentlemen's features. I looked for some features that would clearly stick with me and I remembered."

and while doing so saw the robbers walking up the street. They stopped under a street light, "in a huddle" and at that time a police car approached with flashing lights. The robbers fled north on Castle Street. Officer Nicholas Stein was in the patrol car and saw the three men running. He pursued them to Wolfe and Chase Streets where they split up, two running east on Chase Street and one north on Wolfe Street. Stein apprehended the two men running on Chase Street. They were Gross and Pace. Pace had a loaded revolver. Officer Thomas Sullivan pursued the one running on Wolfe Street and apprehended him. It was Wagstaff and on his person was $43 in one dollar bills and about $16 in coins. Gross was arrested within ten minutes of the robbery.

On the evidence before the lower court we cannot say that it was clearly wrong in determining that Gross knew why he was placed in custody. We note that Gross did not claim that he did not in fact know why he was in custody and being placed in a lineup but only asserted that he was not so advised by a police officer or any other person. On the factual finding that Gross knew why he was in custody, we do not believe that the waiver was not intelligently and understandingly made merely because the police may not have so informed him. Nor do we feel that the lower court was clearly erroneous in finding that the waiver was otherwise intelligently and understandingly made.

As Gross' attack on the lineup goes only to the waiver of the right to the presence of counsel and as we have held that the lower court was not clearly erroneous in determining that the waiver was proper, the lineup must be deemed to have been legal. As the lineup was legal, testimony by the officer as to Seglinski's identification of Gross at the lineup was properly admitted as substantive evidence of identification independent of the in-court identification by Seglinski, the out-of-court declarant being present at the trial and subject to cross-examination. And as the lineup was legal, it could not taint the

in-court identification by Seglinski. We hold there was no error in the denial of the motion to suppress.

As there is no need to decide it, we expressly leave open the question whether lack of knowledge by an accused as to why he is in custody and placed in a lineup would preclude an understanding and intelligent waiver of the right to the presence of counsel at a lineup. We note that we think it the better practice for the police to inform an accused why he is being placed in a lineup, especially when they rely on waiver of counsel to establish the legality of the lineup.

*Judgments affirmed.*