## MICHAEL JOHN JOSEPH RIFE *v.* STATE OF MARYLAND

[No. 557, September Term, 1969.]

*Decided July 10, 1970.*

The cause was submitted to MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas J. Aversa, Jr.*, for appellant.

*Robert A. DiCicco, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County*, and *Edward A. DeWaters, Jr., Assistant State's Attorney for Baltimore County*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

As of 1 July 1969 there is statutory authority in this jurisdiction for the first time for police officers and persons other than police officers to arrest without a warrant. Ch. 561, Acts 1969, codified as Maryland Code, Art. 27, §§ 594 B and 594 C. Section 594 B provides that a police officer, as defined in subsection (f) thereof, may arrest without a warrant any person:

I) for any crime
   1) which the arrestee commits or attempts to commit in the officer's presence or within his view [subsection (a)] ; or
   2) which the officer has probable cause to believe is being committed in his presence or within his view and may reasonably believe the arrestee is committing [subsection (b)] ;
II) for a felony
   1) which the officer has probable cause to believe has been committed or attempted by the arrestee, whether or not in the officer's presence or within his view [subsection (c)] ;
III) for certain designated offenses and attempts to commit certain designated offenses
   1) when the officer has probable cause to believe :

a) that the arrestee has committed or attempted to commit such offense; and

b) that unless immediately arrested, the arrestee

i) may not be apprehended; or

ii) may cause injury to the person or property of one or more persons; or

iii) may tamper with, dispose of, or destroy evidence [subsections (d) and (e)].

Section 594 C specifies under what circumstances and conditions certain persons other than police officers have the same power to arrest without a warrant as do police officers.

On 5 July 1969, about 10:45 A.M., two young men walked into the rental office of the Dundalk Apartments Company and stole $2791.19 at gun point from Inez Drew Gittings, an employee of the company. She described one of the robbers as having dark hair and the other as having light hair. "The dark hair boy wore a white shirt with the tail out, had real dark brown or black hair, and acne skin. The light hair boy had a striped jersey on with dark pants, loafers and no stockings." Shortly after the robbery Sergeant Roy Nelson of the Baltimore County Police Department received a broadcast over the police radio reporting the "armed robbery" and the following description of the robbers: "Number one, a white male, approximately fifteen years old, slender built, approximately five feet two, dark brown hair, wearing long sleeve shirt, long white sleeves shirt, dark pants, no further description. Number two was another white male, approximately fifteen years old, slender built, approximately five feet two, long dirty blond hair, wearing a striped brown jersey shirt and brown pants. No further description." About 11:45 A.M. he received "a supplement radio broadcast * * * as to one of the two possible being Italian descent,

darker skin in color * * *." The officer went to an area around Willow Spring Road and Broening Highway "that kids congregate around quite a bit" and was checking that area when "I observed two subjects walking along the railroad tracks which parallel Broening Highway. I observed these two subjects walking in a direction towards Baltimore City. At the point near Rauls Avenue, I lost sight of them for a minute, and then they continued out onto Broening Road off the railroad tracks, down Broening Road and continued on Broening Road towards the Tollgate Creek Bridge. * * * While they were walking along the railroad tracks before being to Rauls Avenue I observed the one subject, later found to be Metallo, with a large bulge in his left front pocket, and I also observed the defendant here today, Michael Rife, who I have known for a number of years in the Dundalk District * * *. And he turned towards the direction of the police car, which was stopped at the time along the edge of Broening Road. The subject number one taller, one a little shorter than the other one, possibly with a large bulge in his pocket, and the defendant here today, having something in his right hand, which I could not determine at the time. However, when they walked out to Broening Road, he brought along what he was carrying in his hand with him. As they walked along Broening Road, I pulled up at the rear of them to stop, at which time they did. I got out of the car armed because they were allegedly to be armed at the time of the commission of the offense. * * * As I approached them, I ordered both subjects to get against the police car. I advised them they were under arrest for armed robbery." The officer had them "identify themselves." They were "John Richard Metallo, white male, eighteen years old, 256 Baltimore Avenue and Michael John Rife, white male, eighteen years, 235 Riverview Avenue, Dundalk. * * * The subject Rife was wearing a white tee shirt with a red trim around the neck and brown loafers with no socks * * * The trousers were brown." It was then that the officer "observed in the right front pocket of Rife * * *

What I could determine from not even touching, by looking into his pocket, was a large amount of what appeared to be U. S. currency folded in half, bulged down in the pocket. * * * I handcuffed the two together, Rife and Metallo and placed them in the rear seat of the police car. * * * At this time I called for assistance." When other officers arrived on the scene the arrestees were searched. Money in denominations of fifty, twenty, ten, five and one dollar bills were found on the person of each, $1393 on Metallo [1] and $1383 on Rife.

Metallo and Rife were jointly indicted but separately tried in the Circuit Court for Baltimore County. Rife was found guilty at a court trial of the robbery of Mrs. Gittings with a deadly weapon.

At the trial appellant made timely objection to the evidence with respect to what was found on his person. The court overruled the objection, stating simply, "I've concluded the arrest is legal." It gave no reasons for this conclusion. Appellant also moved that Nelson's testimony be stricken and the motion was denied. He contends on appeal that evidence as to what was found on his person was admitted in error because the search of him and the seizure of the money from him were unreasonable as incident to an illegal arrest.

We cannot find that the warrantless arrest of appellant was legal on the record before us. It does not show that appellant committed or attempted to commit a crime in the officer's presence or within his view, Code, Art. 27, § 594 B (a), or that the officer had probable cause to believe a crime was being committed in his presence or within his view, Id., § 594 B (b). The officer had probable cause to believe that the felony of robbery with a deadly weapon had been committed. But the State failed to establish that he had probable cause to believe that appellant committed it. Id., § 594 B (c). It adduced no evidence that the boys observed by the officer matched the physical description of the robbers received by the offi-

---

1. The officer gave the total as $1493 but the sum of the various denominations of bills listed by him was $1393.

cer over the police radio. The State did not elicit from the officer whether, before the arrest, he thought that each of the boys was about five feet two and were of slender build (he said one was taller than the other), that each looked to be about fifteen years of age, that one had dark brown hair and dark skin, appearing to be of Italian descent and was wearing a white long sleeve shirt and dark pants, that the other had long dirty blond hair and was wearing a striped brown jersey shirt and brown pants. The State did not ask the officer to describe Metallo's clothing and the clothing appellant was wearing as described by the officer did not match the description broadcast except as to the brown pants. What it was the officer saw appellant carrying in his right hand was never disclosed. And it is clear that he saw the money in appellant's pocket after the arrest and we can only conclude from the sequence of events as described by the officer that his observation of the money in appellant's pocket was a consequence of the arrest, so that if the initial arrest was invalid the observation would not support a subsequent arrest. It may well be that the officer in fact had probable cause to believe that appellant had committed the armed robbery of which the officer had knowledge, but if he did the State did not establish it on the record. Nor can we find that the arrest was authorized by Code, Art. 27, § 594 B (d). Offenses proscribed by Code, Art. 27, § 36, related to carrying or wearing a weapon, are among those within the ambit of § 594 B (d), but although the officer may have had probable cause to believe that the robbers were wearing or carrying a weapon—"they were allegedly to be armed at the time of the commission of the offense"—for the reasons above discussed it was not shown that he had probable cause to believe that the arrestees were those robbers as required by § 594 B (d) (2). The statute authorizing warrantless arrests does not affect the established definition of probable cause, and, as a matter of fact, subsections (a), (b) and (c) of the statute are declarative of the common law rules long followed in this jurisdiction. For the definition

of probable cause see *Simmons v. State,* 8 Md. App. 355. For an application of it see *Sands v. State,* 9 Md. App. 71. We hold that the arrest was illegal. On this holding, the search of appellant and the seizure of the money from his person were unreasonable and the overruling of the objection to testimony regarding it and the denial of the motion to strike such testimony were erroneous. The errors involved the constitutional right to be secure against unreasonable searches and seizures. We cannot say that the erroneous admission in evidence that a large sum of money in an amount of approximately one-half of the proceeds of the robbery was found on appellant's person was harmless beyond a reasonable doubt. We must reverse the judgment. *Chapman v. California,* 386 U. S. 18.

Despite our holding we think it advisable to discuss briefly the other two contentions made by appellant. Urging that the evidence was not sufficient to sustain the conviction, appellant centers on the proof of his criminal agency, claiming that none of the State's witnesses identified him as one of the robbers. We consider this contention so we may point out that what is apparent to those in attendance at the trial, may not be revealed by the record. On appellant's motion made at the bench all witnesses were excluded. Thereafter, at his request, he was permitted to sit among the spectators in the courtroom. Mrs. Gittings was called by the State and sworn. At that point the court recessed for a short period and when it reconvened appellant changed his position "to a different position in the rear of the courtroom." Mrs. Gittings testified as to the circumstances of the robbery. The transcript then reads:

> "Q (by the Assistant State's Attorney, Edward A. De Waters, Jr.) : Now, Mrs. Gittings, I want you to take your time and look around this courtroom, and see if you can identify either one of those two men in the courtroom this morning. Now, take your time. If you want to get up and walk around and look closer, please feel free to do so.

THE COURT: You may get down from the witness stand.

MR. DE WATERS: There are a lot of people in the courtroom, so if you want to, you may get up and take your time.

(Whereupon the witness left the witness chair.)

MR. DE WATERS: Feel free to walk around anyplace you want to.

THE WITNESS: I can't hear you.

This young fellow sitting here (indicating.)

MR. DE WATERS: Go over, Mrs. Gittings, and point out who you think the young man is.

THE COURT: Walk up to the person.

MR. DE WATERS: Look carefully and pick the man out who you think it is.

Look carefully, now.

A This fellow here.

MR. DE WATERS: Stand up, please.

All right, Mrs. Gittings.

THE COURT: Now, you have identified the person in the courtroom.

MR. DE WATERS: The gentleman that was identified, would you state your name?

MR. RIFE: Michael John —

MR. BOWIE (Defense counsel): Wait a minute.

THE COURT: No, he does not have to state his name. You identify that person in the courtroom.

A Yes, sir.

THE COURT: You described two boys, one dark hair boy and one light hair boy. Is the person that you identified, which one is he?

A The light hair boy.

THE COURT: All right."

Defense counsel did not cross-examine. Of course the record does show that a "Mr. Rife" started to give the name

"Michael John —" when the person identified was asked to state his name. But the court ruled that he did not have to state his name. It is arguable that it may be concluded that it was the defendant on trial who was identified; it would only be the defendant who would not be obliged to testify so as to prompt the ruling of the court. And it is arguable that it was the defendant who was identified because his name was Rife and a "Mr. Rife" started to answer the request of the State. But to leave the identification of a defendant as the criminal agent to these types of speculations and inferences can hardly be said to be a proper manner for the State to fulfill its burden of proving an accused guilty beyond a reasonable doubt. On the record all that is directly shown is that the witness identified a person in the courtroom. All the State had to do was to state for the record, if that was the fact, that the person identified was the defendant. We note that the State called four other witnesses who had an opportunity to observe the robbers about the time of the commission of the crime. One apparently saw them in the office before the robbery. Two saw them as they fled from the rear entrance of the rental office after the robbery. The fourth saw them a short time later. Betty Hanlon saw them leave the office and described them but was not asked to make a judicial identification. On cross-examination it was elicited that she had made an extra-judicial identification at a lineup of two persons as the robbers and one so identified was other than Rife or Metallo. Whether the other so identified was appellant or Metallo was not brought out. John O. Herr saw two boys leave the office and gave a general description of them. He was not asked to make a judicial identification and was not cross-examined. Gary James Griffiths saw two persons pass his house near the rental office. He only recognized one of them, Metallo, who was wearing a long white shirt and grey trousers. On cross-examination it was adduced that he attended a lineup and identified Metallo. "I only identified one, and that was the only one I knew. That was all." Robert S. Sherman, Mrs. Gittings employer,

was not asked on direct examination if he saw the robbers in the rental office nor was he asked to make a judicial identification. On cross-examination he said he attended a lineup and identified a person named Metallo but was not asked where he had seen Metallo before that confrontation.[2] No officer was called either by the State or by appellant to testify with respect to any lineup conducted.

Appellant also contends that the trial court erred in admitting evidence of an extra-judicial identification by Mrs. Gittings. On inquiry by the State of her on direct examination it was adduced that she had attended a lineup on the day of the robbery. The transcript reads:

> "Q (By Assistant State's Attorney) : Were you able to identify anyone there?
> A Yes, I did.
> Q Who did you identify?
> A I identified two men.
> Q Did you subsequently find out their names?
> A Yes.
> Q What were their names?
> MR. BOWIE (defense counsel) : Objection.
> A Rife was one of them.
> THE COURT: Overruled.
> A Pardon?
> THE COURT: Go ahead.
> A Rife was one of them, and Mr. Metallo was the other one."

Whether the "Rife" she identified at the lineup was appellant was not established. We do not reach the question whether the objection of appellant as made was sufficient to bring into question the legality of the lineup. It seems that the court was under the impression that "the unfair-

2. In the testimony of Mrs. Gittings it appeared that Sherman had come into the rental office while the robbers were present but before the robbery. They had come in on the ruse of renting an apartment and one of them was filling out an application.

ness of the lineup" was not under attack.[3] But we call attention to our opinions setting out the manner for challenge of evidence of identification, the procedure upon challenge and the exclusionary rules which come into play when a pretrial confrontation is illegal. Although the general rule is that a witness may testify as to an identification made by him at a pretrial confrontation and that such evidence is admissible either as corroborative of a judicial identification or as substantive evidence of criminal agency, if the pretrial confrontation was illegal, evidence of an identification made at it is *per se* to be excluded. If admitted it is prejudicial error unless harmless beyond a reasonable doubt, applying *Chapman v. California, supra.* See *Palmer v. State,* 5 Md. App. 691; *Smith and Samuels v. State,* 6 Md. App. 59; *Bailey v. State,* 6 Md. App. 496; *Joyner v. State,* 7 Md. App. 692; *Gross and Wagstaff v. State,* 8 Md. App. 341; *Jones v. State,* 9 Md. App. 455; *Billinger v. State,* 9 Md. App. 628.

> *Judgment reversed; case remanded for a new trial.*

---

3. About to render its verdict the court asked appellant if he wanted to be heard. The transcript reads:

"MR. RIFE: Your Honor, as to the lineup, I waived my rights for a lawyer there because I figured that if I waited for a lawyer they take prejudice against me, and when I went into the lineup, it was me and the Metallo boy and three or four cadets in there, which they were like I consider that none looked like us.

THE COURT: The unfairness of the lineup has not been attacked in this case, and I don't feel that the lineup had any thing or prejudiced the in-Court identification by Mrs. Gittings this morning."