Martha RICHARDSON, Individually and
as Administratrix of the Estate of
Rene Richardson, Deceased

v.

Elmer L. SNOW, Individually and in his
capacity as a detective of the Prince
George's County Police Department,
et al.

Civ. No. 70-1093-M.

United States District Court,
D. Maryland.

April 5, 1972.

Harleigh P. Ewell, Robert H. Law and
Law & Ewell, Bowie, Md., for plaintiff.

Robert B. Ostrom and DePaul & Wil-
loner, College Park, Md., for defendant
Elmer L. Snow.

Walter H. Maloney, Jr., Prince
George's County Atty., Harry L. Durity,
Deputy County Atty., Glenn B. Harten,
Associate County Atty., and Martin A.
Hertz, co-counsel, Upper Marlboro, Md.,
for defendants John Doe, Richard Roe,
Peter Poe, and Vincent Free.

John D. Connelly, Clinton, Md., for
defendant G. L. Beckman.

JAMES R. MILLER, Jr., District
Judge.

### Memorandum Opinion

Elmer L. Snow, a detective of the
Prince George's County Police Depart-
ment, and Vincent Free, formerly Chief
of the Prince George's County Police
Department, who are among the defend-
ants in this proceeding, have each filed
a motion for summary judgment in this
proceeding brought by the plaintiff for
adjudication of claims allegedly arising
under 42 U.S.C. §§ 1983 and 1988. The
plaintiff has filed a motion to compel
disclosure of the identity of an inform-
ant who allegedly furnished certain in-

formation to the Prince George's County Police Department relating to the complicity of Rene Richardson in one or more armed robberies. This suit arises basically out of the fatal shooting of Rene Richardson by the defendant, Elmer L. Snow, then and now a police officer, when he subsequently sought to detain or arrest the decedent without a warrant on September 24, 1969.

### I

As to the defendant Free, the complaint alleges that, as Chief of the Police Department of Prince George's County, he maintained within the Department a policy of rounding up persons to be held without probable cause in the hope that they would be identified as the perpetrators of unsolved crimes. Plaintiff also alleges that even if Free did not directly invoke such a policy, he knew or should have known that there was such a policy extant in his Department and that he was negligent in failing to terminate such policy. The plaintiff's argument concludes that Free's alleged policy infringed upon decedent's civil rights and resulted in his death.

Free's affidavit accompanying his motion for summary judgment states that, although he was Chief of Police of Prince George's County, Maryland at the times relevant, he has no knowledge of the incident which is the basis of this action, he was not personally involved in the incidents recited in the complaint, nor did he direct the same or ratify them in any way, and that he did not issue any instructions or orders to the members of the Police Department that suspects were to be "rounded up" and brought in for questioning against their will and without probable cause for an arrest. Although a number of depositions have been taken in this case and interrogatories have been presented and answered, plaintiff has established no facts directly contradicting any of the statements in Free's affidavit. Nevertheless, plaintiff contends that inferences can be drawn from the facts which would indicate that Free either invoked

or sanctioned the policy of "rounding up" suspects without probable cause for arrest.

As a general rule, an official will not be liable in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the federal Constitution. E. g. Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969); Runnels v. Parker, 263 F.Supp. 271 (C.D.Cal.1967). It is not sufficient to hold a chief of police liable for the wrongful acts of his subordinates merely to show that the wrongdoer was acting under the general supervision of the chief. Barrows v. Faulkner, 327 F.Supp. 1190 (N.D.Okl. 1971); Fanburg v. City of Chattanooga, 330 F.Supp. 1047 (E.D.Tenn.1968); Sanberg v. Daley, *supra;* Patrum v. Martin, 292 F.Supp. 370 (W.D.Ky.1968); Runnels v. Parker, *supra;* see also Bennett v. Gravelle, 323 F.Supp. 203, 214 (D.Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971).

A frequently cited case in this area is Jordan v. Kelly, 223 F.Supp. 731 (W.D. Mo.1963), where, in entering summary judgment for the chief of police and members of the Board of Police Commissioners in an action under § 1983 for damages allegedly resulting from the arrest of the plaintiff by a police officer, the court said:

"The chief of police would not be responsible for the wrongful acts of the officer unless he was present or unless it is shown he directed such acts or personally cooperated in them, and there is no dispute but that he was not present, did not direct them and did not cooperate in the making of the arrest.

"The allegation that the arresting officer was acting under the general supervision, direction and control of the chief of police is not sufficient to render him liable . . .." 223 F. Supp. at 739.

In the present case, even taking the inferences in the light most favorable to the plaintiff, there is nothing more than an allegation that the arresting officer was acting under the general supervision, direction and control of the defendant Free in his capacity of Chief of Police. There are absolutely no facts to contradict the affidavit of Free or to establish that he was present or personally directed or cooperated in the acts leading to the death of the decedent.

■ To the extent that the plaintiff's complaint seeks to establish liability on the part of defendant Free as a result of negligence on his part, the record does not support any finding of "gross or culpable negligence" on the part of the Chief of Police which might support § 1983 liability under the doctrine of Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970).

Defendant Free's motion for summary judgment must, therefore, be granted.

## II

■ As to defendant Snow, the motion for summary judgment must be denied. Under a § 1983 action of this type, there is a defense of good faith and probable cause which is available to a police officer. Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). As more fully explained in the third section of this opinion, "probable cause" in this context does not mean probable cause in the objective constitutional sense, but means *reasonable* belief on the part of the police officer that he was acting in a legal manner.

■ The ultimate questions to be decided in the trial of Snow are: (1) Did defendant Snow have grounds, based on information known to him at the time, reasonably to believe in good faith that he had a right to arrest Rene Richardson? (2) Did defendant Snow, acting in good faith and with a reasonable belief in the validity of his action, attempt to arrest Rene Richardson? (3) If so, did defendant Snow in attempting to make the arrest use. force in excess of that which in good faith he reasonably believed to be necessary to effect the arrest under the circumstances then and there existing? Pierson v. Ray, *supra;* Vaccaro v. Collier, 38 F.2d 862, 868 (D. Md.1930); Baltimore & Ohio Railroad Co. v. Strube, 111 Md. 119, 127, 73 A. 697 (1909); Restatement (Second) of Torts, §§ 121(b), and 132 (1965); 1 Harper and James, The Law of Torts, § 3.18 at 299 (1956).

Assuming for present purposes that defendant Snow in good faith had a reasonable belief that Rene Richardson had committed a felony and was, therefore, subject to arrest under the provisions of Art. 27, § 594B(c) Md.Anno.Code (1971 Repl.Vol.),[1] without a warrant, and assuming further that there was in this case an arrest or an attempt to arrest Rene Richardson by Snow,[2] there is at least a dispute of material fact on the question of whether excessive force was used by Snow to prevent the escape of Rene Richardson.[3]

1. This section is declarative of common law rules long in effect in Maryland. Wescott v. State, 11 Md.App. 305, 273 A.2d 824 (1971); Rife v. State, 9 Md.App. 658, 267 A.2d 326 (1970).

2. An arrest is ". . . the detention of a known or suspected offender for the purpose of prosecuting him for a crime." officer and merely questioned as to his Cornish v. State, 215 Md. 64 at 67–68, 137 A.2d 170, 172 (1957). "One is not arrested when he is approached by a police identity and actions. This amounts to no more than an accosting." *Ibid;* see "The

Law of Arrest in Maryland," Kauffman, 5 Md. Law Rev. 125, 131–33.

3. Sections 15–16(b) (2), Ordinances and Resolutions of Prince George's County, provides in pertinent part:
   "No member of the police department shall use firearms on or off duty, except in the following cases:
   *        *        *        *        *
   "(2) To prevent the escape of a felon, particularly if the felon is known to the officer and his escape might result in his going unpunished for the offense."

Agnes Chase testified in her deposition that Rene Richardson was walking away from Snow's police car with a baby in his arms when the defendant Snow pulled out his gun and aimed at Richardson (Dep.Tr. 22, 25, 43), that no oral warning was given to Richardson by Snow to stop before Snow fired his pistol (Dep.Tr. 23, 25, 43), and that Snow fired at least the first shot before Snow had left the police car (Dep.Tr. 22). Irene Marie Riggs in her deposition testified that Rene Richardson started walking away from the police car when Snow told him that he had no warrant for Richardson's arrest (Dep.Tr. 17, 21), that Richardson did not start running until Snow got out of the car with his gun (Dep.Tr. 17, 22–24), that Snow gave no oral warning before he fired the gun (Dep.Tr. 22–24) that Snow fired the first shot from the car on the driver's side and the second shot from the rear of the car (Dep.Tr. 24), and that Richardson did not put the baby down until Snow had fired the first shot (Dep.Tr. 24).

The deposition of defendant Snow contains, on the other hand, his testimony that Richardson put the baby down immediately and started running when Snow told him to stay in the car (Dep.Tr. 18), that Snow yelled for Richardson to stop before any shots were fired (Dep. Tr. 19), that Snow started chasing Richardson before he fired any shots (Dep.Tr. 19), and that the first two shots were warning shots (Dep.Tr. 20).

There may be other disputes of material fact, but the aforegoing demonstrates amply that there are disputes of material fact which are important to the resolution of the liability related issue of whether or not defendant Snow used force in excess of that which he reasonably and in good faith believed was necessary under all the circumstances to prevent the escape of Rene Richardson. The versions of Agnes Chase and Irene Marie Riggs of the events, if believed by the jury, could establish that Snow gave no warning to Richardson to stop and took no substantial action to prevent the escape of Richardson other than to shoot at him with deadly aim. Those facts could be sufficient to support a verdict for the plaintiff and at least create a jury question.

### III

Plaintiff has moved for disclosure of the identity of an alleged informant who provided to the Prince George's County Police Department information, which allegedly was conveyed to defendant Snow by Detective Daniels, that Rene Richardson had been involved in a robbery of a High's store in early September 1969. Defendant Snow relies in part upon his knowledge of the informant's statement to establish his "probable cause" for attempting the arrest of Rene Richardson without a warrant on September 24, 1969. The plaintiff alleges that in fact there was no informant and that the information allegedly derived from the informant was manufactured by the police in order to provide Snow with probable cause to arrest Richardson after he already had been killed.

Assuming that Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957); Drouin v. State, 222 Md. 271, 160 A.2d 85 (1960); and Westinghouse Electric Corp. v. City of Burlington, Vermont, 122 U.S.App.D.C. 65, 351 F.2d 762 (1965), authoritatively established that in a civil case the identity of an informer may be obtained where the information allegedly received from the informer is essential to establish the validity of the arrest or search and there is an issue as to whether or not there ever was in fact an informer, still, under the facts of the instant case, the motion of the plaintiff to compel disclosure of the identity of the alleged informant must be denied. In this court's view this result obtains because the "probable cause" to establish the defense of defendant Snow under Pierson v. Ray, *supra*, is not probable cause in a constitutional sense, but is instead a reasonable belief on the part of defendant Snow that his conduct was lawful in attempting to carry out an arrest. This being the standard, it is immaterial whether

or not there actually was an informant as long as defendant Snow reasonably and in good faith believed there was an informant, even assuming for the purpose of this motion that no other basis for an arrest existed in Snow's mind except what he understood had been conveyed by the informant.

This court is aware of no decision of the Fourth Circuit or of the Supreme Court which definitively establishes the meaning of "probable cause" as a defense for a police officer in the context of a § 1983 civil action. Pierson v. Ray, *supra,* does not set forth with clarity and precision such a definition. A number of courts have intimated that the "probable cause" which was referred to by the Supreme Court as a defense in Pierson v. Ray is probable cause in a constitutional sense. Joseph v. Rowlen, 402 F.2d 367 (7th Cir. 1968); Anderson v. Haas, 341 F.2d 497 (3rd Cir. 1965); Sexton v. Gibbs, 327 F.Supp. 134 (N.D. Tex.1970.) In those cases, however, on the facts it was clear that there either was probable cause in the constitutional sense (which would make the distinction academic) or the defendant police officer clearly did not have reasonable grounds to believe his actions to be valid. Cf. Strutt v. Upham, 440 F.2d 1236 (9th Cir. 1971); Banish v. Locks, 414 F.2d 638 (7th Cir. 1969); Notaras v. Ramon, 383 F.2d 403 (9th Cir. 1967).

The Second Circuit, in Bivens v. Six Unknown FBI Agents, 456 F.2d 1339 (2nd Cir. 1972), while a case involving federal law enforcement officers and consequently not being a § 1983 case, analogized the position of federal officers, as defendants in a federal common law action for damages caused by a violation of the Fourth Amendment, to that of state or local police officials in a § 1983 action. Judge Medina for the court stated as follows:

"The numerous dissents, concurrences and reversals, especially in the last decade, indicate that even learned and experienced jurists have had difficulty in defining the rules that govern a determination of probable cause, with or without a warrant . . . As he tries to find his way in this thicket, the police officer must not be held to act at his peril.

"Therefore, to prevail the police officer need not allege and prove probable cause in the constitutional sense. The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And so we hold that it is a defense to hold and prove good faith and reasonable belief in the validity of the arrest and search and in the necessity of carrying out the arrest and search in the way the arrest was made and the search was conducted. We think, as a matter of constitutional law and as a matter of common sense, a law enforcement officer is entitled to this protection." 456 F.2d at p. 1348.

Judge Lumbard, in a concurring opinion, amplified on this theme as follows:

"Ordinarily when a suit of this type is brought a court will have already determined that there was no probable cause for the arrest and search complained of. Nevertheless the agent has a complete defense if he can convince the trier of the fact that he acted in good faith and that it was reasonable for him to have believed that the arrest and search were lawful. Thus there are two standards to be considered. The first is what constitutes reasonableness for purposes of defining probable cause under the Fourth Amendment for the protection of citizens against government overreaching. The other standard is the less stringent reasonable man standard of the tort action against government agents. This second and lesser standard is appropriate because in many cases federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding, and about which they frequently

**1266**

differ among themselves. It would be contrary to the public interest if federal officers were held to a probable cause standard as in many cases they would fail to act for fear of guessing wrong. Consequently the law ought to, and does, protect government agents if they act in good faith and with a reasonable belief in the validity of the arrest and search." *Supra,* at p. 1348.

This court believes that the reasoning of the Second Circuit in *Bivens, supra,* is as valid and as applicable in actions under § 1983 involving state or local law enforcement officials as it is to federal law enforcement officers. As was stated in Whirl v. Kern, 407 F.2d 781 at 790 (5th Cir. 1969), "An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation." To require the police officer, under penalty of personal liability for damages if he is in error, to make on-the-spot complex and intricate legal determinations of the existence or absence of probable cause under the Fourth and Fourteenth Amendments when the courts, acting in a more leisurely and relaxed atmosphere, have difficulty in making these decisions is to place the policeman in just such a position of acting at his peril as was declared to be intolerable in Pierson v. Ray, *supra,* 386 U.S. at 555, 87 S.Ct. at 1218. It is no answer to this intolerable burden to cite cases such as Beck v. Ohio, 379 U.S. 89, at 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), where a subjective good-faith test for actions of the policemen in an arrest was rejected since those cases deal with constitutional standards applicable to the admission of evidence in the trial of a criminal case rather than to the question of civil liability of a policeman who, in good faith and with a reasonable belief in the legality of his acts, has attempted to perform his duty to protect society. Such a distinction in this court's view is entirely compatible with the balancing of the interest of society in attempting to protect itself from the effects of criminal behavior and of the interests of the individual in the enjoyment of his constitutional rights.

To the extent that this opinion is inconsistent with an oral opinion delivered by this court on March 24, 1972, concerning the plaintiff's motion to compel the disclosure of the identity of an informant, said oral opinion is rescinded and superseded hereby.

An order has been entered in conformance with this opinion.