**Wilbert M. BROWN, Plaintiff,**

v.

**Ned BENTON, Individually, and as Director of the Oklahoma Department of Corrections, Defendant.**

**No. CIV–77–0545–T.**

United States District Court,
W. D. Oklahoma.

March 30, 1978.

Henry W. Floyd, Lewis Barber, Jr., Oklahoma City, Okl., for plaintiff.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

RALPH G. THOMPSON, District Judge.

Plaintiff Wilbert M. Brown, a member of the black race, has brought this action against Ned Benton, individually, and as Director of the Oklahoma Department of Corrections (Department), alleging that plaintiff was terminated from his employment as a probation and parole officer in whole or in part because of his race. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981, 1983 and 2000e. Plaintiff has sought back pay, punitive damages, reinstatement, injunctive relief, costs and attorneys fees. The case was tried to the Court without a jury commencing March 17, 1978. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law.

As to plaintiff's claim under 42 U.S.C. § 1983, the Court concludes that upon the facts and the law plaintiff has shown no right to relief inasmuch as it is admitted by the parties that defendant Benton was not employed by, or associated individually or officially in any manner with the Department until October 21, 1975, which was well after April 3, 1975, the date the alleged discriminatory acts and practice complained of occurred, and there was no evidence whatsoever of any personal participation therein. As a general rule, an official will not be liable in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges and immunities secured him by the United States Constitution. *Richardson v. Snow*, 340 F.Supp. 1261 (D.Md.1972); *Harty v. Rockefeller*, 338 F.Supp. 367 (E.D. N.Y.1972). The personal involvement of one allegedly denying constitutional rights under color of state law is an essential element of the civil rights claim against him. *Battle v. Lawson*, 352 F.Supp. 156 (W.D.Okl.1972). Here, there was no personal involvement, no participation, notice or acquiescence on the part of this defendant because he was not even then employed or in any way associated with the Department at any time pertinent to the act complained of.

Additionally, as to the claim under 42 U.S.C. § 1981, on the basis of the stipulation that defendant Benton was not employed by or associated in any manner with the Department when the alleged discriminatory action occurred, and in absence of any evidence establishing that he ordered, had knowledge of or notice of, or acquiesced in, or otherwise had any responsibility whatsoever for any of the specific acts alleged as a basis for this action, plaintiff has likewise failed to show a right to relief, the personal involvement of the defendant being an essential element of the section 1981 civil rights claim against him. *Miller v. Saxbe*, 403 F.Supp. 1314 (D.C.D.C.1975).

Accordingly, plaintiff's claims against defendant individually, and all claims under section 1981 and section 1983 are dismissed. Rules 41(b) and 52, Federal Rules of Civil Procedure. The case will proceed on the claim brought against defendant Benton in

his official position as the present Director of the Department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., which provides in pertinent part:

"§ 2000e–2. Unlawful employment practices—Employer practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; * . * * "

Plaintiff was employed by the Department on or about March 1, 1975. Its normal hiring procedures for the position of probation and parole officer required background investigations prior to hiring, but at that time the Department was making a concerted effort to hire minority employees to satisfy federal minority employment requirements and plaintiff was hired *subject to* his satisfactorily passing the background investigation which was commenced shortly thereafter. As a result of information developed in such background investigation, plaintiff was considered unqualified for the position of probation and parole officer and was discharged from his conditional employment on April 3, 1975. Upon his termination, plaintiff was not confronted specifically with the adverse information which led to his discharge. Plaintiff thereafter filed a complaint with the Oklahoma Human Rights Commission alleging that his termination was based solely on his race and subsequently the charge of discrimination was filed with the Equal Employment Opportunity Commission which issued, on March 10, 1977, a letter advising plaintiff of his right to sue within 90 days. Plaintiff timely filed his complaint herein on June 9, 1977.

The issue here is whether the evidence has established that plaintiff's race was the basis and reason for his termination. While conditionally employed, the background investigation resulted in a report stating that sources, including individuals and files of the F.B.I., Tulsa and Oklahoma City Police Departments, and Oklahoma County Sheriff's Office, had identified plaintiff as a member and leader of the Black Panther Party; who called for the violent overthrow of the United States government in public, media-reported speeches; who had admitted the use of narcotics; whose driver's license was suspended; who had held approximately 20 jobs since 1966; who was failing to support his two illegitimate children; who was a bankrupt; who described himself as a fulltime revolutionary; who had referred to police officers as "stupid pigs" and threatened the life of an officer; who had purchased an "M1 Carbine" and ammunition during the period of such activity; who was reportedly implicated in some manner in a plot to blow up various state institutions, in a burglary producing military weapons from a Florida armory, and in an assassination plan against a state senator.

While taking sharp issue with many of the items so reported, plaintiff testified that he had in fact stated "If it is necessary we will rise up and destroy and burn Tulsa" in a speech to a civic club in Tulsa; that he had been correctly quoted in advocating the overthrow of the United States system of government, replacing it with a Marxist and Leninist system; that if it "takes violence" to overthrow the ruling class, then "violence will be applied"; that black soldiers should join the Viet Cong and help eliminate Imperialist forces and, that in the Chapel of the University of Tulsa, he called a policeman a " * * * racist pig" in a moment of passion. He further acknowledged stating in substance, "They tell me there is such a thing as a good cop but I don't know because I've never seen one" and, commenting on his future, "I can't step back into the system—never". The foregoing statements were reported by the news media between 1969 and 1971 in various accounts of plaintiff's activities.

Plaintiff testified that he was not confronted by Department personnel about the quotations, nor about most of the items contained in the report. Plaintiff did ac-

knowledge having been asked about belonging to organizations which advocated the overthrow of the United States government during his application processing and interview to which he answered no. Plaintiff further confirmed the news account in the report that during this period he had purchased an "M1 Carbine" and ammunition, stating that it was for the protection of his "family", described as meaning all black persons. Plaintiff denied having threatened the life of a police officer as reported. He further testified that he had advised the Department that the two arrests so reported had resulted in a conviction with subsequent reversal and a dismissal, respectively. He further testified that he had since re-evaluated his earlier activities and reoriented his attitudes.

Don Watson, an employee of the Department who conducted the background investigation and personally interviewed plaintiff during the application process, testified that the background investigation report accurately set forth the information acquired by him during the course of the investigation, specifically including, among the other items reported, plaintiff's admitted use of narcotics and the Oklahoma County Sheriff's Department having furnished information relating plaintiff to a plot to blow up various state institutions and plans to assassinate a state senator. Plaintiff emphatically denied such charges and the Deputy Sheriff said to have furnished the information testified that he could not now, some three years later, specifically recall having done so.

The total or substantial accuracy of each of the items contained in the background investigation report is not the controlling issue here. The information so reported was taken from the plaintiff personally or from the files of law enforcement agencies and reported by the officer of the Department charged with the responsibility for the background investigation and report. The report was admitted into evidence not for the purpose of proving the truth of its contents, but to serve as direct evidence of the information available to the Department and upon which its personnel acted in discharging plaintiff. The issue before the Court is not whether plaintiff was guilty of doing the things charged in the report, but whether he was discharged because of his race. Plaintiff's admissions of many of the report's contents do, however, lend support for the legitimate concern of the Department officials about plaintiff's doubtful effectiveness. In any event, if plaintiff's discharge was for a lawful reason, even though the Department acted on bad advice, no violation of Title VII was committed. *Doe v. AFL–CIO, Dept. of Organization, Region 6,* 405 F.Supp. 389 (N.D.Ga. 1975), aff'd 537 F.2d 1141 (5th Cir. 1976). The critical issue is whether or not, having the report before it, the Department, through its authorized personnel, had a legitimate, nondiscriminatory reason for plaintiff's termination which was not a pretext or cover-up for a racially discriminatory action not related to job performance. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The Department's then Deputy Director for Probation and Parole, C. E. Williams, who terminated plaintiff, testified that background investigations were considered essential for all applicants or conditionally employed probation and parole officers because of the gravity and sensitivity of their responsibilities, their authority to carry firearms, their duty to counsel and supervise felons and their essential need to work in especial harmony and cooperation with all law enforcement agencies. Williams denied that race was any basis for plaintiff's termination and that, in fact, plaintiff was hired because he was a black, as part of the Department's affirmative action to employ racial minorities, and that he was terminated because the information so acquired established that he was not qualified to perform the responsibilities enumerated above.

The evidence has established that the Department was concerned that as a result of plaintiff's widely publicized revolutionary and anti-law enforcement pronouncements and other activities reported by law enforcement agencies, his admitted use of narcotics and other enumerated items re-

ported, plaintiff was singularly and obviously totally unsuited to work in harmony and close cooperation with the law enforcement agencies or to effectively counsel and supervise felons who, being charged with rehabilitating their own lives, require a stable, mature, law-abiding example, influence and motivation from their probation and parole officer.

There was no evidence that race was the reason for plaintiff's termination. Plaintiff was conditionally hired in an effort to accomplish employment of racial minorities. There was no evidence of a general pattern of discrimination against blacks by the Department. There was no evidence of discriminatory treatment against plaintiff during his short period of employment there. There was no evidence that the reasons for plaintiff's termination were a pretext or that the investigation and report were undertaken or accomplished as such.

 The standards and criteria applied to plaintiff were related to effective job performance and were nonracial in nature, applicable alike to members of all races. In consideration of the unique responsibilities of probation and parole officers, the Court concludes that the evidence is abundant that the defendant's reason for plaintiff's termination for that particular position was based upon a rational and racially neutral, nondiscriminatory basis, and that its reason for plaintiff's termination was not remote, insubstantial or unrelated to plaintiff's personal qualifications for the position. The Department's reason cannot be thought to be the kind of artificial, arbitrary and unnecessary barrier to employment which the Supreme Court has found to be the intention of Congress to remove. As the United States Supreme Court has stated on several occasions:

> "Past conduct may well relate to present fitness; past loyalty may have a reasonable relationship to present and future trust. Both are commonly inquired into in determining fitness for both high and low positions in private industry and are not less relevant in public employment."

*Garner v. Los Angeles Board,* 341 U.S. 716, 720, 71 S.Ct. 909, 912, 95 L.Ed. 1317 (1951); *McDonnell Douglas Corp. v. Green,* supra.

Plaintiff has thus failed to prove that race was any basis for his termination and the evidence clearly establishes defendant's nondiscriminatory reason for it. Accordingly, judgment is granted on behalf of the defendant herein, and plaintiff's complaint is dismissed.

It is so ordered this 30th day of March, 1978.