Susan **RODARTE**, a minor, by her next friend, Ben Rodarte, Appellant (Plaintiff below),

v.

The **CITY OF RIVERTON**, a Wyoming Municipality, et al., Appellees (Defendants below).

**No. 4480.**

Supreme Court of Wyoming.

July 20, 1976.

F. M. Andrews, Jr., Riverton, for appellant.

Donald P. White, of White & Hansen, Riverton, for appellees, City of Riverton and Riverton Police Reserves.

James W. Owens, of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellees, Horyza, McAuslan, Barber and Hays.

ON REARGUMENT

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

### NATURE OF THE ACTION

This appeal comes from an incident involving the arrest of plaintiff-appellant Susan Rodarte, a minor, by members of the Riverton Police Department on December 18, 1973. The appellant charges wrongful arrest and battery against various appellees-defendants and asks that they respond in damages. A member of the so-called "Riverton Police Reserves" participated in the activities of the other police officers upon the occasion in question here and this aspect of the appeal will be discussed later in the opinion.

The appellees say that there was no arrest but, if we find to the contrary, it is nonetheless assumed by this court that the

contention is made that there existed *good faith and probable cause* [1] to believe a crime had been or was being committed by the plaintiff, which warranted her being handcuffed and transported to the Riverton Police Station in a police patrol car, where she was physically searched, questioned and subsequently released with no complaint having been filed.

All defendants filed motions for summary judgment, which were sustained and judgment entered accordingly. This appeal arises from that judgment and from denial of plaintiff's motion for summary judgment seeking injunctive relief against the "Reserves."

There is no dispute in the factual area of the appeal and therefore we adopt the appellant's statement of facts, which is also acceptable to the appellees. The opinion will be supplemented by other facts gathered from the record, including those suggested by appellees, as they seem necessary and appropriate.

On December 18, 1973, Susan Rodarte and her friend Nita Gina met Don Jasch and Fred Skorcz by happenstance at Taco John's, a fast-food outlet in Riverton, Wyoming. Plaintiff knew Jasch, the driver of the pickup truck, but she did not know Skorcz, nor did she know that the vehicle was his. The girls were asked and they agreed to ride around with the men provided they could first return the plaintiff's automobile to her home where she would deliver it to her parents. This was done and the boys picked up the girls at the plaintiff's residence, whereupon they returned to Taco John's.

A warrant had previously been issued for the arrest of Fred Skorcz, charging him with the sale of narcotics, and the Riverton police were looking for him. The plaintiff did not know this, nor is there any evidence to indicate that she, at any time prior to her arrest, had any knowledge whatever of Skorcz' marihuana activities. Upon discovery and identification of the Skorcz vehicle in the vicinity of Taco John's, Officers Barber and Lain of the Riverton Police Department notified the police station and kept the subject under surveillance while Officer McAuslan (who was in plain clothes) and "Reserve Officer" Hays (who was in full uniform) proceeded to the scene to direct and aid in the arrest of Skorcz. The two police vehicles were positioned in front and in back of the pickup and, when confronted by the officers, Skorcz identified himself and was removed from his pickup truck and placed in the custody of Hays, the "Reserve" policeman, who handcuffed him and ordered him into a police patrol car. The plaintiff, Nita Gina and Don Jasch also removed themselves from the pickup at the direction of the police officers. Hays did not participate in the arrest of Gina, Jasch and Rodarte.

In the course of these activities, Officers Lain and McAuslan observed a plastic sack on the floor of the pickup containing plant material which they suspected to be marihuana. McAuslan gave instructions to Officers Lain and Barber to take the three occupants "downtown," whereupon, without interrogation, inquiry or further ado, all three were handcuffed and transported in the other police vehicle to the police station. The two men were given a "pat down" search before the vehicles left the scene, but the women were not. At no time was there any threat of harm to the police officers or any attempt to escape made by any of the four suspects. The officers did not inform the plaintiff, either at the scene or at the police station, what charge, if any, was to be lodged against her. In fact, she was never charged with any crime or wrongdoing. Miss Rodarte testified by deposition that the officer who drove them to the police station told them

---

1. The defendants actually allege that there was "probable cause" to make the arrest. We assume a defense of "good faith and probable cause" because we are remanding for trial on the issues under the assumption that *good faith and probable cause* will be urged as an affirmative defense.

that they were under arrest for "possession of marihuana," but the officers have insisted that they did not arrest the plaintiff for any violation.

At the station, after a matron searched the clothing and person of the plaintiff, she was questioned by Officer McAuslan as to whether she owned the suspected marihuana or whether she knew to whom it belonged, and when her responses were negative Officer McAuslan told her she could go. The total time of detention at the station was between 15 and 20 minutes.

## INTRODUCTION TO THE OPINION

This case presents an opportunity to analyze for Bench and Bar the question of "probable cause" for arrest in the constitutional or criminal context on the one hand, and the "good faith and probable cause" defense to the defendant-arresting officer in a tort case on the other hand.

We inquire into this question exhaustively because we recognize the distinction to be misty, hazy and vague and we also realize that police officers, as well as the public, may not know of their rights unless courts will define them. That the area has its hazards is indicated by the observation of Judge Medina in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 2 Cir. 1972, 456 F.2d 1339, 1348, where he said:

"The numerous dissents, concurrences and reversals, especially in the last decade, indicate that even learned and experienced jurists have had difficulty in defining the rules that govern a determination of probable cause, with or without a warrant. See e. g., *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed. 2d 409 (1970); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Wong Sun v. United States*, 371 U.S.

471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). As he tries to find his way in this thicket, the police officer must not be held to act at his peril."

## ISSUES RAISED BY THE APPEAL

### I

The appellant defines her first issue for resolve here as follows:

"The Court erred in ruling, as a matter of law, that the arrest was lawful and that the subsequent handcuffing and search was [sic] necessary, proper and reasonable."

The trial judge said in his memorandum opinion:

"In my judgment there was probable cause for the officers to believe that *a crime was being committed in their presence*, and the arrest therefore was lawful. Marijuana was also found under the part of the seat occupied by the plaintiff. [Emphasis supplied]

\*　　\*　　\*　　\*　　\*　　\*

"The arrest being lawful, it would seem to me that the handcuffing and the search were both necessary, proper, and reasonable under the circumstances and in the absence of any other claim of mistreatment, abuse, excessive force or other improper action by the officers, motion for summary judgment will be granted."

The other side of the coin is that if the arrest was *unlawful* for want of the kind of good faith probable cause that will serve as a defense in a civil action where wrongful arrest is charged, the handcuffing and search were *improper*.

If it was intended by the trial judge that his finding be understood to mean that there was good faith and probable cause for the officers to believe that *Susan Rodarte, the plaintiff, was committing a crime in their presence,* then we cannot agree that this could be concluded as a matter of law under the undisputed facts of this case. Miss Rodarte could not,

of course, be arrested upon a contention of good faith and probable cause to believe that she was present while *someone else was committing a crime in the presence of the officers absent any good faith showing or cause to believe that she had participated therein.*

■ Since the record does not disclose undisputed evidence of good faith and probable cause to believe that the appellant had committed a crime or was, in the presence of the officers, committing a crime, thereby authorizing her warrantless arrest, we hold that the entry by the lower court of a summary judgment against this plaintiff was prejudicial error necessitating reversal, and the case must be, and is herewith ordered, remanded for trial on the issues and under instructions of law which are not inconsistent with this opinion.

### What Is An Arrest?

We preliminarily address ourselves to the question of whether Susan Rodarte was arrested.

In his opinion, the trial judge said:

"The plaintiff asserts she was arrested. The testimony of the officers is somewhat uncertain or indefinite but there is no dispute as to the principal action taken and, according to the opening definition of arrest in the article on this subject in American Jurisprudence, it would seem plain that she was in fact arrested."

■ The definition to which the judge had reference is the following:

"An arrest is the taking, seizing, or detaining of the person of another, (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested.

"To effect an arrest, there must be actual or constructive seizure or detention of the person arrested, or his voluntary submission to custody, and the restraint must be under real or pretended legal authority . . ." 5 Am Jur 2d, Arrest § 1, p. 695.

This is an acceptable definition of arrest and description of the actions of the officers necessary to effect an arrest.

■ Under the facts, the lower court found plaintiff to have been arrested—we find that she was arrested—counsel for appellees Horyza, McAuslan, Barber and Hays stipulated that she had been arrested for all purposes to which the summary judgment and this appeal are addressed and yet—the police officers of the City of Riverton steadfastly have declared that the plaintiff was never arrested by any officers of the Riverton Police Department on the occasion in question.

Susan Rodarte was arrested when she was ordered out of the pickup—directed by a police officer to get into a police car—handcuffed and taken to the police station where she was searched. That amounted to an arrest under any definition of arrest ever conceived by the mind of man!!! The alarming thing is that the Riverton Police Department doesn't seem to believe that this kind of activity with respect to a subject constitutes arrest.

One of the defendant-appellee-officers participating in the arrest, when asked these following questions, responded:

"Q In your opinion, was she under arrest?

"A No, sir.

"Q What to you in your opinion constitutes an arrest?

"A Confinement.

"Q Confinement?

"A Yes, sir.

"Q You mean they have to be behind bars before they are under arrest?

"A Yes, sir.

"Q Is that your understanding of an arrest?

"A This is the way I interpret it, myself."

We recite this colloquy between the officer and counsel because it may strike at the problem's very heart. Perhaps this court has been derelict in its duties and obligations to the law enforcement departments of the government. It might be that law enforcement officers do not understand the legal concept of arrest. We recognize, therefore, an obligation to be more explicit on this subject.

■ Excepting only where the officer temporarily detains for investigation, for an arrest to take place the officer need only subject the person he confronts to some kind of control and detention amounting to a restriction upon his or her freedom. He arrests when he, with the present ability to do so, exerts his will upon the citizen in a way which indicates an intention to detain him or to take him into custody—he arrests him when he issues an order in a way which causes the subject to believe he must obey the command which, if obeyed, results in a restriction upon freedom. The officer arrests when, in order to detain, he touches his subject or lays hands on him. Extensions of these basic restrictions constitute an arrest such as, for example, placing the subject in the police car—handcuffing him and taking him to the police station—putting him in jail, etc. But these latter drastic activities are but more dramatic examples of impairment of the individual's freedom. Any laying on of hands or any detention coupled with an act or attitude indicating the officer's apparent intention to assume physical control or to take the subject into custody is also an arrest.

■ This does not mean that a person may not be detained by the officer for investigation without an arrest being effected where there is probable cause to believe there has been a crime committed or to believe one is being comimtted, coupled with a belief that the subject is or could be involved in its commission. Under such probable cause circumstances the person may be detained for inquiry.[2]

In the instant matter there was no "temporary detention" for the purpose of on-the-spot questioning or for any other purpose. The plaintiff was not questioned or even identified prior to arrest. She was just arrested.

## PROBABLE CAUSE—CRIMINAL AND CIVIL

There are two standards which serve as tests for probable cause where wrongful arrest and false imprisonment are in issue:

■ The first is a constitutional standard which the defendant in a criminal case may assert and can be described as that which

". . . constitutes reasonableness for purposes of defining probable cause

---

2. In *United States v. Sanchez*, 10 Cir. 1971, 450 F.2d 525, 528, the court said: "Temporary detention for limited investigatory purposes, as well as a full blown arrest, is protected by the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, in Terry it was observed that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest, and that the test of any governmental invasion of a citizen's personal security is its reasonableness in the light of all the surrounding circumstances. "In this same vein it has been held that probable cause to arrest requires something more than probable cause to temporarily detain for the purpose of attempting, for example, some on-the-spot questioning and that, as concerns the latter, brief detention under circumstances that would not justify an arrest is not ipso facto unconstitutional. See such cases as *Wilson v. Porter*, 361 F.2d 412 (9th Cir. 1966); *United States v. Unverzagt*, 424 F.2d 396 (8th Cir. 1970); and *United States v. Oswald*, 441 F.2d 44 (9th Cir. 1971). And in *United States v. Harflinger*, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137, it was held that a brief detention based on an officer's reasonable suspicion that criminal activity was afoot is constitutionally permissible for the purposes of a limited inquiry and that incriminating evidence which may come to the officer's attention during such period of detention can become a reasonable basis for effecting a valid arrest."

under the fourth amendment for the protection of citizens against governmental overreaching . . ." Judge Lumbard, concurring in Judge Medina's opinion in *Bivens*, supra, at page 1348 of 456 F.2d.

▉▉▉ The second is less stringent and is couched in the philosophy of tort law.

Judge Medina said in *Bivens*, supra:

". . . The standard governing police conduct (in the civil suit for wrongful arrest) is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable . . ." 456 F.2d, at page 1348. [Parenthetical matter supplied]

## PROBABLE CAUSE FOR ARREST

### *The Constitutional Criminal Standard Examined*

▉▉▉ Before an officer in Wyoming can make a legal warrantless arrest he

must first have probable cause to believe that a crime (as defined by statute) has been committed *by the person to be arrested* or he must have reasonable grounds to believe that an offense is being committed in his presence *by the person to be arrested*.[3] The same concept is reflected in the ordinances of the City of Riverton.[4] The statutes and the ordinances are the appropriate expressions of the State and Federal constitutional guarantee of every citizen's right to due process of law.[5]

### *Why Must Probable Cause be Present as Between the Suspect and the Arresting Officer?*

Why is it necessary to have probable cause to believe the person to be arrested is committing or has committed a crime before a lawful and constitutional arrest can be made?

It was said in *Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed. 2d 134 (1959):

". . . for it is the command of the Fourth Amendment that no warrants for

---

3. Section 7–12.3, W.S.1957, 1975 Cum.Supp. "Arrests without warrant.—(a) A peace officer may arrest a person without a warrant and detain him until a legal warrant can be obtained when:

"(i) Any criminal offense is being committed in his presence *by the person to be arrested;* or

\* \* \* \* \*

"(iii) A misdemeanor, as defined by section 6–2 of the statutes has in fact been committed and the peace officer has reasonable grounds for believing that the *person to be arrested* has committed it and has reasonable grounds for believing that the person:

"(A) Will not be apprehended unless immediately arrested; or

"(B) May cause injury to himself or others or damage to property unless immediately arrested; or

"(C) May destroy or conceal evidence of the commission of such misdemeanor." [Emphasis supplied]

4. "The Riverton Municipal Code, at § 18–6, defines the powers of the Municipal Police relative to arrest:

" 'Policemen shall, at all times, have power to arrest, without process, and [sic] all cases where any such offense shall be committed or attempted in their presence . . .

" ' . . . all policemen, as conservators of the peace, shall have power to arrest or cause to be arrested, with or without process, and take before the Police Judge all persons . . . who shall be found in the act of violating any ordinance or who may be reasonably suspected of having committed any crime or misdemeanor . . . ' " [From appellant's brief]

5. "No person shall be . . . deprived of life, liberty, or property, without due process of law; . . ." Fifth Amendment, Constitution of the United States.

" . . . nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ." Section 1, Fourteenth Amendment of the Constitution of the United States.

"No person shall be deprived of life, liberty or property without due process of law." Article 1, Section 6, Constitution of the State of Wyoming.

either searches *or arrests* shall issue except 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" [Emphasis supplied]

In *Wong Sun v. United States,* 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963), Mr. Justice Brennan, speaking for the Court, said:

"... The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.'" (Footnote omitted) Citing *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879.

### What is Probable Cause in the Criminal-Constitutional Context?

In *Williams v. United States,* 10 Cir., 323 F.2d 90, 93 (Wyo.1963), the circuit appellate court said:

"'"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." * * * *Probable cause exists where "the facts and circumstances within their* [the officers'] *knowledge and of which they had reasonably trustworthy information* [are] *sufficient in themselves to warrant a man of reasonable caution in the belief that"* an offense has been or is being committed."'" Citing *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879. [Emphasis supplied]

Mr. Justice Stewart, in delivering the opinion of the Court in *Beck v. State of Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), said:

"... Whether that arrest was constitutionally valid depends in turn upon whether, *at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge* and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879; ...." [Emphasis supplied]

These are fair and workable conceptual explanations of what constitutes probable cause for arrest—*as between the suspect and the arresting officer—that is—probable cause in the constitutional context.*

Did the arresting officers, at the moment of arrest, have within their knowledge facts sufficient to warrant a "prudent man" to believe that Susan Rodarte had committed or was committing an offense? What was she doing or had she done which would furnish an arresting officer sufficient foundation in fact to warrant men of "reasonable caution," without further inquiry of any kind, to believe that she had committed an offense or was, in their presence, committing a crime? What did they sense—or know—or see—or feel—that would furnish sufficient present knowledge to constitute probable cause to arrest her for either committing or having committed a crime?

The crime that the officers indicated they believed was being committed in their presence was *possession of a controlled substance* (marihuana), which is, under our statutes a misdemeanor.[6]

---

6. Section 35–347.31, W.S.1957, 1975 Cum. Supp., is entitled, "Unlawful manufacture or delivery; counterfeit substance; unlawful possession." Pertinent portions thereof are as follows:
 "(a) Except as authorized by this act [§§ 35–347.1 to 35–347.55], it is unlawful for

any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.
 * * * * *
 "(c) It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was

Susan Rodarte was sitting in a truck with three other persons, one of whom, Fred Skorcz, the owner of the vehicle, the police had authority to arrest under a warrant on the charge of "delivery of a controlled substance." § 35–347.31, supra. This warrant was based upon prior activities of Skorcz totally unrelated to the events of this occasion and had nothing to do with the other people involved here, a fact with which the police-defendants were chargeable with knowledge. The plaintiff was present when, in the course of this arrest, two bags of a substance which appeared to the police officers to be marihuana were discovered on the floor of the truck which the police officers knew belonged to Skorcz.

At the time of and prior to her arrest the plaintiff was not recognized by anyone known to the police as either being dangerous or a law-violator. She wasn't recognized at all. The officers did not even ask her name. They asked her no questions whatever. She did not in any way resist the officers—she was not interrogated at the scene prior to her arrest as to her knowledge about or ownership of the baggies which appeared to the officers to be marihuana—she was not asked about her

association with Skorcz—and she was not inquired of in any other way. When she was asked a few questions at the police station about her knowledge of the ownership and origin of the marihuana, she was almost immediately released.

■ Under the above recited facts, probable cause for arrest, in the constitutional and criminal context, was not present. That is—if this were a criminal case in which the question of whether there existed probable cause for arrest under these facts, we would be inclined to a conclusion that there was no probable cause for the arrest—as a matter of law.

We said in *Lofton v. State,* Wyo., 489 P.2d 1169, 1172:

". . . We recognize that an arresting officer must be shown to have been acting on facts constituting probable cause . . ."

The standards to be applied to the facts upon which the arresting officer must determine probable cause at the time of the arrest in a criminal constitutional context

"are as stringent as the standards applied with respect to a magistrate's assessment, . . ." [7]

---

obtained directly from, or pursuant to a valid prescription or order of, a practitioner while acting in the course of his professional practice, . . . Any person who violates this subsection is guilty of a misdemeanor and may be imprisoned in the county jail not more than six (6) months and fined not more than one thousand dollars ($1,000.00) . . ."

7. *Lofton v. State,* supra.
 In *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 566, 91 S.Ct. 1031, 1035–1036, 28 L.Ed.2d 306 (1971), the United States Supreme Court said:
 "The State, however, contends that regardless of the sufficiency of the complaint to support the arrest warrant, the Laramie police officer who actually made the arrest possessed sufficient factual information to support a finding of probable cause for arrest without a warrant. In support of this proposition, *the State argues that a reviewing court should employ less stringent standards for reviewing a police officer's*

assessment of probable cause as a prelude to a warrantless arrest than the court would employ in reviewing a magistrate's assessment as a prelude to issuing an arrest or search warrant. That proposition has been consistently rejected by this Court. United States v. Ventresca, 380 U.S. [102], at 105–109, 85 S.Ct. 741, at 746, [13 L.Ed. 2d 684]; Aguilar v. Texas, 378 U.S. [108], at 110–111, 84 S.Ct. [1509], at 1511–1512, [12 L.Ed.2d 723]; Jones v. United States, 362 U.S. [257], at 270–271, 80 S.Ct. [725], at 735–736, [4 L.Ed.2d 697]. And the reason for its rejection is both fundamental and obvious: less stringent standards for reviewing the officer's discretion in effecting a warrantless arrest and search would discourage resort to the procedures for obtaining a warrant. Thus the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment. See McCray v. Illinois, 386 U.S. 300, 304–305,*

■ It would seem axiomatic that criminal probable cause is the cause which logically leads to a conclusion that *the person to be arrested* is the one who had committed or was engaged in the commission of the crime. Of course, this is a condition of the statute under which the arrest was purportedly made. (§ 7–12.3, W.S. 1957, 1975 Cum.Supp.)

It is said in 5 Am.Jur.2d Arrest, § 44, p. 735, under the heading "Probable Cause for Arrest of Suspected Persons—Generally," at page 736:

"Probable cause to believe that a felony has been committed is not enough, without probable cause to believe that the person to be arrested is the guilty party . . ." [8]

■ The district court, as well as counsel for appellees, seem to adopt the position that a crime was apparently being committed in the presence of the officers which, in and of itself, gave them the right to arrest Susan Rodarte without a warrant, all without regard to whether or not it was she who was committing it. The mere fact that a crime is being committed in the presence of the officer does not, by statute, ordinance, or any other authority, give the officer the power to arrest everyone in sight.[9] He may act only when a

"criminal offense is being committed in his presence *by the person to be arrested;* . . ." § 7–12.3(a)(i), W.S.1957, 1975 Cum.Supp. [Emphasis supplied]

■ Mere suspicion coupled with the officers' good faith will not suffice as probable cause for arrest.[10] The officer must possess a factual knowledge which leads him as a reasonable man to believe that his subject is committing or has committed a crime.[11]

87 S.Ct. 1056, 1058–1059, 18 L.Ed.2d 62 (1967)." [Emphasis supplied]

8. It was held in *Craft v. State*, 202 Miss. 43, 30 So.2d 414, 415–416, in considering statutes such as our § 7–12.3, W.S.1957, 1975 Cum.Supp.:

" . . . The statute is declaratory of the common law and under it there must be probable cause to believe that (1) a felony has been committed, and (2) *that the person to be arrested is the guilty party. Howell v. Veiner,* 179 Miss. 872, 880, 176 So. 731. *It is not enough that there is good ground to believe that a felony has been committed, but the ground for the belief must include also as an element essential to the right to arrest that the party to be arrested is the person guilty of the felony. Without the second element the first had as well not exist."* [Emphasis supplied]

In *People v. Hornal,* 29 Ill.App.3d 308, 330 N.E.2d 225, 230, the court said:

"The ultimate test (for probable cause in a warrantless arrest), however, is whether an offense has been committed and the arresting officer has reasonable grounds to believe the person arrested has committed it . . ." (Citing other Illinois cases) [Parenthetical matter supplied]

9. It is said in Annotation: 28 L.Ed.2d, "Arrest—Probable Cause," at page 995:

" . . . [I]n *Mallory v. United States* (1957) 354 U.S. 449, 1 L.Ed.2d 1479, 77 S.Ct. 1356, where a woman who lived in

the same apartment building as the accused and his two grown nephews was raped by a masked man whose general features were identified to resemble those of the accused and his two nephews, and where the accused and the two nephews were apprehended by the police as suspects and all three were taken to the police station for interrogation, the court, besides reversing the accused's rape conviction on other grounds, recognized that *whomever the police arrest, they must arrest on probable cause, and that it is not the function of the police to arrest, as it were, at large and use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on probable cause."* [Emphasis supplied]

10. 5 Am.Jur.2d, Arrest § 45. Suspicion and suspicious circumstances. See Note 2 for further authority: *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; *State v. Cuezze,* Mo., 249 S.W.2d 373; *Feguer v. United States* (CA8 Iowa) 302 F. 2d 214, cert. den. 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110; *Young v. State,* 234 Md. 125, 198 A.2d 91; *Commonwealth v. Dorsey,* 212 Pa.Super. 339, 243 A.2d 176; Annotation: 28 L.Ed.2d 978, 986 § 3[c].

11. It is said in Annotation: 28 L.Ed.2d 978, 986 § 3[c], supra, (*Whiteley v. Warden,* supra):

"The Supreme Court has emphasized that mere suspicion or good faith on the part

Further,

". . . to afford a justification, there must be not only a real belief and reasonable grounds for it, but also, where there is opportunity to make inquiry, proper investigation into the facts."[12]

Justice Douglas, in his learned opinion in *Henry v. United States,* supra, said:

". . . And as the early American decisions both before and immediately after its (the Fourth Amendment to the U.S. Constitution) adoption show, common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day. See *United States v. Di Re,* 332 U.S. 581, 593–595, 68 S.Ct. 222, 227, 228, 92 L.Ed. 210; *Johnson v. United States,* 333 U.S. 10, 13–15, 68 S.Ct. 367, 368, 369, 92 L.Ed. 436; *Giordenello v. United States,* 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503. Its high water was *Johnson v. United States,* supra, where the smell of opium coming from a closed room was not enough to support an arrest and search without a warrant. It was against this background that two scholars recently wrote, 'Arrest on mere

suspicion collides violently with the basic human right of liberty.'

"Evidence required to establish guilt is not necessary. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. On the other hand, good faith on the part of the arresting officers is not enough. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. *Stacey v. Emery,* 97 U.S. 642, 645, 24 L. Ed. 1035. And see *Director General of Railroads v. Kastenbaum,* 263 U.S. 25, 28, 44 S.Ct. 52, 53, 68 L.Ed. 146; *United States v. Di Re,* supra, 332 U.S. 592, 68 S.Ct. 227; *Giordenello v. United States,* supra, 357 U.S. 486, 78 S.Ct. 1250. It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent. *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 286, 69 L.Ed. 543. And while a search

---

of arresting officers is not sufficient to constitute probable cause for an arrest.

"Thus, in *Director General of Railroads v Kastenbaum* (1923) **263 US 25, 68 LEd 146, 44 SCt 52,** the court, in a civil action for false imprisonment, affirmed a judgment in favor of the plaintiff and stated that good faith on the part of the defendant was not enough to constitute probable cause for the plaintiff's arrest; that good faith must be grounded on facts within the knowledge of the person responsible for the arrest, which facts in the judgment of the court would make the good faith reasonable; that the want of probable cause, certainly in the absence of proof of guilt or conviction of the arrestee, was measured by the state of the knowledge of the person responsible for the arrest, not by his intent; and that the question was not whether the person responsible for the arrest thought the facts to constitute probable cause, but whether the court thinks that such facts constituted probable cause.

"In *Mallory v United States* (1957) **354 US 449, 1 LEd2d 1479, 77 SCt 1356,** it was recognized that the police could not arrest upon mere suspicion, but only upon probable cause.

\* \* \* \* \*

"In *Wong Sun v United States* (1963) **371 US 471, 9 LEd2d 441, 83 SCt 407,** the court recognized that an arrest with or without a warrant had to stand upon firmer ground than mere suspicion, . . .

"Holding that probable cause for an arrest was lacking, in *Beck v Ohio* (1964) **379 US 89, 13 LEd2d 142, 85 SCt 223,** the court stated that it could assume that the officers acted in good faith in arresting the accused, but that good faith on the part of the arresting officers was not enough."

12. 5 Am.Jur.2d, Arrest § 45, supra. See also *McCrackin v. State,* 150 Ga. 718, 105 S.E. 487; *People v. Ward,* 226 Mich. 45, 196 N. W. 971; *Manning v. Atchison, T. & S.F.R. Co.,* 42 N.M. 381, 79 P.2d 922; and *State v. Hughlett,* 124 Wash. 366, 214 P. 841.

without a warrant is, within limits, permissible if incident to a lawful arrest, *if an arrest without a warrant is to support an incidental search, it must be made with probable cause. Carroll v. United States, supra,* 267 U.S. at pages 155–156, 45 S.Ct. at pages 285–286. This immunity of officers cannot fairly be enlarged without jeopardizing the privacy or security of the citizen . . ." [Parenthetical matter and emphasis supplied]

▇▇▇▇ The mere suspicion which arises out of the arrested person's presence in the vicinity where the crime has been or is being committed does not constitute probable cause in the constitutional context.[13]

In the instant matter, it appears that the officers arrested the plaintiff, Susan Rodarte, for "possession" of marihuana. To constitute a lawful arrest they must have had probable cause to believe that she had committed or was committing the crime as defined by the statute. Under *United States v. Di Re,* supra, her mere presence in the vehicle belonging to another where the contraband was discovered did not amount to possession nor was it adequate to establish probable cause for believing the crime in question had been or was being committed by her.

▇▇▇▇ We have said in *Mulligan v. State,* Wyo., 513 P.2d 180, that where the only evidence of possession is that narcotics were discovered in premises occupied by the plaintiff with others, this is inadequate evidence to convict for possession. True, evidence to constitute probable cause need not be so strong as to establish guilt. *Brinegar v. United States,* supra. On the other hand—mere suspicion is not enough. *Whiteley v. Warden,* supra.

These are the protections, precepts and parameters within which the citizen may find his safety against unlawful arrest and within which the officer must enforce the law.[14]

▇▇▇▇ The test of the officer's mettle in making a constitutional criminal warrantless arrest is the reasonable-man test applied against a standard as stringent

"as the standards applied with respect to a magistrate's assessment . . ." (*Lofton v. State,* supra)

made by the officer under the circumstances prevailing at the time.

---

13. *Adams v. State,* 137 Tex.Cr.R. 43, 128 S.W.2d 41.

In suppressing evidence from a search following an arrest questioned as having been made without probable cause, the United States Supreme Court in *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, held that the fact that the accused was sitting in a car next to the driver who was pointed out to the police as having in his possession counterfeit gasoline-ration coupons did not constitute facts sufficient to support a probable-cause conclusion that the accused was also committing the crime.

Rejecting the contention that probable cause existed, the Court observed that at the time of the arrest the officers did not have any information pointing to possession of coupons by the accused unless just being in the car amounted to possession. In holding that the mere presence in the vehicle did not amount to possession, the Court noted that there was no evidence to show that the accused was in the vehicle when the coupons were obtained by the other party who had physical possession of them and that the accused had not known of any conversation on the subject—nor was it shown that he knew of the presence of the coupons in the car.

14. The United States Supreme Court, in *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, said: "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be of those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Under the facts and the law reviewed here, and if we were involved in determining whether there was probable cause present in the constitutional or criminal sense, we would have to conclude that there were insufficient facts present and known to the officers at the time of the plaintiff's arrest which would lead men of "reasonable caution" to the conclusion that a crime had been or was being committed by the plaintiff. In their depositions the officers readily admitted that she was ordered into the patrol car, handcuffed, taken to the police station and searched because they *suspected* that she was in possession of marihuana.[15] They made no efforts to confirm these suspicions and they had no facts upon which to base them except that she was present in a vehicle with others at a time when marihuana was discovered. This constituted the probable cause upon which the officers relied,[16] but it does not constitute probable cause in the constitutional context. (*Adams v. State,* supra, *United States v. Di Re,* supra, and our holding in *Mulligan v. State,* supra) It follows that if the arrest was unlawful in the constitutional sense, the handcuffing and search were unnecessary, improper and unreasonable—in the same constitutional context.

## GOOD FAITH AND PROBABLE CAUSE—A DEFENSE IN TORT

As compared to the standard which serves for testing the constitutional assertions of the defendant in a criminal case[17], there is a second less stringent standard which the defendant police officer may assert in defense of wrongful arrest and false imprisonment.

The United States Supreme Court, in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, recognized the common-law doctrine that the police officer in a civil wrongful arrest or false imprisonment action could plead and prove as a defense that he was, at the time of making the arrest,

> "act[ing] in good faith and with probable cause." (*Pierson,* supra)

*Bivens,* supra, at 456 F.2d 1348, described the standard governing police conduct in a tort action as follows:

> ". . . The standard governing police conduct (in the civil suit for wrongful arrest) is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable . . ." [Parenthetical matter supplied]

 It is to be observed that the *Pierson* rule, supra, speaks in the conjunctive —not the disjunctive. It doesn't say good faith *or* probable cause. It doesn't say the police officer should be relieved of liability if he is able to show *only* good faith irrespective of whether or not he can also show probable cause. He must be able to

15. One of the officers said:

" . . . [T]he other three subjects (plaintiff, Jasch and Gina) were taken into custody *for suspicion* of having in their possession a contraband substance . . ." [Emphasis and parenthetical matter supplied]

Another said:

"At this time the other three subjects (including plaintiff) were taken into custody *on the suspicion* of having in their possession a controlled substance without prescription . . ." [Emphasis and parenthetical matter supplied]

16. When asked in his deposition what probable cause he was relying on to make the arrest of the plaintiff, Officer Barber said:

"I believe there was probable cause as there was suspected contraband found in the vehicle which the subjects were occupying at the time."

17. The constitutional standard for probable cause for arrest which the defendant may urge in a criminal case is one which

" . . . constitutes reasonableness for purposes of defining probable cause under the fourth amendment for the protection of citizens against governmental overreaching . . . " *Bivens,* supra.

show both—not in the criminal constitutional sense but in the context of the reasonable-man theory of tort law. The court, in *Pierson v. Ray,* supra, said:

". . . Part of the background of tort liability, in the case of police officers making an arrest, is the defense of *good faith and probable cause."* 386 U.S. at 556–557, 87 S.Ct. at 1219.

If good faith only could be applied as a standard for liability in a civil case, absent the requirements of probable cause, there could be no successful prosecution for wrongful arrest. The officer would only have to say, in a warrantless arrest situation such as is present here—"In good faith, I arrested the suspect, believing him to be committing a crime." This would be sufficient because "good faith"—absent the probable cause requirement—is not amenable to subjective inquiry. The presence or absence of "good faith" without probable cause can exist only in the mind of the officer. It can never be tested or cross-examined. "Good faith *and* probable cause" may be tested by objective inquiry.

*Good faith and probable cause* suggest an objective inquiry into the arrest circumstances which permits a resolution of the question which asks whether or not probable cause (in the reasonable-police-officer context) did or did not exist at the time of making the arrest.

▮ If the defendant, acting as a reasonable police officer at the time of making the arrest, in good faith believes that such facts are present as to lead him to an honest conclusion that a crime is being committed by the person to be arrested, then he may not be held liable for false arrest—even if the crime was not in fact being committed—and even if probable cause *in the constitutional sense* is not present.

▮ But—if the objective inquiry reveals that even though the officer purports to have been in good faith—yet he did not make the inquiry—the determinations—the observations and the investigation of fact

required by an officer of the law acting reasonably and prudently in the same circumstances, then he may not be relieved of his liability for wrongful and false arrest.

The court, in *Tritsis v. Backer,* 355 F.Supp. 225, 227 (N.D.Ill.1973), aff'd 7 Cir. 1974, 501 F.2d 1021, quoting *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 2 Cir.1972, 456 F.2d 1339, 1347–1348, said:

"'. . . [t]he standard governing police conduct (a false arrest and imprisonment) is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable . . .'" [Parenthetical matter supplied]

In *Richardson v. Snow,* 340 F.Supp. 1261, 1263 (D.Md.1972) the court said:

"The ultimate questions to be decided in the trial of Snow are: (1) Did defendant Snow have grounds, based on information known to him at the time, reasonably to believe in good faith that he had a right to arrest Rene Richardson? . . ."

▮ The conclusion to be drawn from the case authority is that—in a civil case, as compared to a criminal case, the standard for determining probable cause for arrest and false imprisonment is different and less stringent. The relaxation comes more out of the background and atmosphere in which the scene is set than it does the test itself. In a criminal case, where the facts are undisputed, probable cause more readily lends itself to solution as a question of law than is the case in civil tort litigation.

In a civil case the rules of tort law are applicable—that is—since good-faith probable cause is ascertainable within the philosophy of negligence, and since negligence becomes a question of law only when the minds of reasonable men can draw but one inference which points unerringly to such

negligence (*Ries v. Cheyenne Cab & Transfer Company,* 53 Wyo. 104, 79 P.2d 468), the presence or absence of probable cause for arrest and false imprisonment must usually be left for resolution as a question of fact for the fact-finder.

In this appeal, the traditional requirement that the negligence must be decided by the jury as a question of fact causes us to determine here that a court—in this fact situation—cannot say, *as a matter of law,* there was no probable cause or that there was probable cause for arrest. We find and hold that the question is one for the jury's determination.

We reverse the lower court on the probable-cause and good-faith issues and remand to the lower court for trial on that question.

## APPELLANT'S ISSUES TWO AND THREE

In appellant's brief, issues numbered 2 and 3 are delineated as follows:

"2. The Court erred in deciding that Hays had no part in the police action with respect to the arrest of plaintiff and therefore granting summary judgment in his favor in the first count.

"3. The Court erred in granting summary judgment and dismissing the City of Riverton and the Riverton Police Reserves on the grounds that they had no involvement in the action, and should have granted plaintiff's motion for summary judgment, on the fourth count of plaintiff's complaint asking for injunctive relief against the extension of police authority to private citizens of Riverton."

Issue number two:

 Turning our attention to issue number two, we do not find under the facts as presented by the record that "Reserve Officer" Hays actually had any part in the arrest of Susan Rodarte. To be sure, he played a major role in the arrest

of Skorcz but he had nothing to do with arresting Miss Rodarte. The trial court's judgment is affirmed on that point.

Issue number three:

The appellant seeks to have us reverse the trial court's ruling on issue number three on the ground that the "Police Reserves" are unauthorized under the statutes of the State of Wyoming and ordinances of the City of Riverton and therefore the "Reserves" and the City of Riverton should be enjoined from engaging in further "Police Reserve" activity.

We do not express our opinion on the problems attendant upon the activities of the "Police Reserves" at Riverton, Wyoming, except to say that we can foresee difficulties arising in a proper case and under a different set of facts. For example, if "Reserve Officer" Hays had in fact participated in the arrest of the appellant, there could have been a multitude of problems associated with the operation of this kind of an organization, which, under those circumstances, would have properly presented themselves for our concern. Having held, however, that Hays did not participate in the arrest of Susan Rodarte, the legality—the powers—and the prerogatives of the "Riverton Police Reserves" are not before us and neither is the liability of the City of Riverton itself for the deeds or misdeeds of the "Reserves."

 The only issue pertaining to the "Reserves" which is raised by the pleadings and supported by this record is whether an injunction against the "Reserves" should have issued to protect appellant-Susan Rodarte from their activities.

We find that there is no injunctive relief warranted under the facts and the law applicable.

We said in *Cantou v. Walker,* 61 Wyo. 56, 68–69, 154 P.2d 530, 534, where this court quoted from *Healy v. Smith,* 14 Wyo. 263, 83 P. 583, in which Mr. Chief

Justice Potter stated the general rules upon which injunctive relief may be predicated:

" '. . . It [injunction] should not, therefore, be granted merely to protect a right where no actual or threatened violation of that right appears. Mr. High [on injunctions] says: "Nor will a court of equity lend its aid by injunction for the enforcement of right or the prevention of wrong in the abstract, and unconnected with any injury or damage to the person seeking relief." High on Inj. (3d Ed.) § 1, . . . "To justify the court in granting the relief, it must be reasonably satisfied that there is an actual intention on the part of the defendant to do the act which it is sought to enjoin, or that there is probable ground for believing that, unless the relief is granted, the act will be done. . . Nor will the court interfere when the evidence shows that there is no probability of defendant doing the act which it is sought to restrain." ' " [Bracketed matter supplied]

The *Cantou* opinion quotes from 28 Am. Juris. 217, Section 24, which says in part:

" '. . . In other words, the relief [injunctive relief] should be awarded only in clear cases, reasonably free from doubt, and, when necessary, to prevent great and irreparable injury. The court should therefore be guided by the fact that the burden of proof rests upon the complainant to establish the material allegations entitling him to relief.' " [Bracketed matter supplied]

These rules are applicable here and we do not find in this record proof sufficient to establish a threatened violation of the rights of the plaintiff—and any right which is sought to be enforced is conjectural and in the abstract. There is no proof of an intention on the part of the "Reserves" to do acts in the future which would be harmful to the plaintiff and there is no showing that unless the injunction were to issue great and irreparable damage would result to her.

We affirm the lower court on issues two and three for the reasons set out herein-

above; and reverse the lower court's holding that the arrest was lawful and remand for trial on that issue.

Reversed in part, and affirmed in part.

THOMAS, Justice (dissenting).

I am compelled to dissent from the decision, conclusions, and views of the majority because my examination of the record and analysis of the pertinent authorities have led me to such markedly different conclusions and views that in my judgment the decision of the trial court should be affirmed in all respects. While the conclusions and propositions of law announced by the majority seductively appear to be reasonable and justified, they present erroneous principles in the following respects:

1. The majority opinion does not recognize the process of balancing the rights and interests of the individual and the rights and interests of all members of the public which must be pursued in an instance such as this.

2. The majority opinion fails to distinguish information sufficient for probable cause from the quantum of evidence necessary to convict.

3. The majority opinion has ignored applicable authorities which demonstrate that in this instance there was probable cause in the constitutional context.

4. The majority opinion erroneously injects principles of negligence into this area of tort law which is not governed by negligence precepts.

5. The majority opinion discusses the law of arrest and furnishes an advisory opinion in an abstract context.

6. The majority opinion structures a psychological injunction forbidding arrest.

The case before this court is not a particularly dramatic one. I suggest a more dramatic, albeit hypothetical, factual situation. I would invite you to go with me into a stark room off a hallway lighted by a single unshaded bulb where there are six

men and one corpse. The dead man has been shot twice through the chest, and on the table, surrounded by a set of chairs, there are some whiskey bottles, some glasses, a deck of cards, some poker chips, and a .38 caliber revolver. We enter this room, you and I, with two police officers whose attention fortuitously was attracted by the sound of the pistol shot. We were all close by, and no one has left through the single door of this room. The police officers have read this majority opinion, and have been instructed as to its application. Both of them have families, and each has a normal interest in his financial welfare and security and that of his family. We watch in dismay and disbelief while these two police officers withdraw to summon the coroner and an ambulance, without arresting anyone. This result, while unacceptable, is mandated by the majority opinion. The mere presence of any of these six men in the room, coupled with the fact of homicide is, according to the majority, insufficient probable cause to arrest.

Turning then to a critical examination of this case, the decision of the majority of this court hinges upon an elevation of the individual rights of the plaintiff over the interests of all, including the plaintiff. This priority is signaled by the unnecessary factual justification of the plaintiff and her conduct. The material facts are not in dispute and are much more limited in actuality than the majority opinion would indicate. With respect to the issue which the district court decided, the material facts are that the police officers had an arrest warrant for one Skorcz which had been issued upon a complaint charging him with unlawful dis-

tribution of a controlled substance to minors. The officers located a pick-up truck which they knew was owned by Skorcz, and seated in the vehicle at that time were two male individuals and two female individuals. Skorcz was seated by the right hand door; the plaintiff was seated next to Skorcz; the other female was between the plaintiff and the other male, the driver. The officers inquired of the group in the pickup for Skorcz, and Skorcz identified himself. He was arrested and the other occupants were asked to get out of the vehicle. At that time the officers discovered in the vehicle two plastic baggies containing a substance which they recognized and believed to be marijuana. One of these baggies was located between the door and the seat of the pickup on the right side, and the other baggie was underneath the front seat in close proximity to the place where the plaintiff had been sitting. Based upon these facts the plaintiff and the two other persons were arrested.[1] These facts are not disputed.

Given these undisputed facts the officers pursued an entirely reasonable course of action. It was their job to determine, if possible, which one of the occupants of the pickup was, or which ones of the occupants of the pickup were, in possession of the marijuana. If any of them had concealed some of the marijuana on his or her person that fact would have been significant. It was a fact that could be determined, however, only by a thorough search, and the policy of the Riverton Police Department very wisely required that female persons be searched by another female in the privacy of the police station. The officers could not search the

---

1. The majority opinion at footnotes 3 and 4 outlines the general arrest authority set forth in § 7–12.3, W.S. and § 18–6 of the Riverton Municipal Code. In addition, § 35–347.45, W.S., which provides that all law enforcement officers in this state shall have responsibility for enforcement of the Wyoming Controlled Substances Act of 1971, specifically provides in Subsection (b)(iii) that any law enforcement officer engaged in the enforcement of the Act may:

"Make arrests without warrant for any offense under this act committed in his presence, or if he has probable cause to believe that the person to be arrested has committed, or is committing a violation * * *."

girls at the scene. The likelihood of any productive interrogation at the scene was almost nil, and consequently, the officers pursued their investigation by the only logical approach. The other occupants of the pickup were arrested and taken to the police station where a search of the plaintiff and the information which was furnished to the officers culminated in her exoneration. The exoneration of the plaintiff, however, is not a material factor in an evaluation of probable cause. Every arrest of an innocent person is not, per se, unreasonable. See *State v. Hum Quock*, 89 Mont. 503, 300 P. 220 (1931).

Any arrest situation presents a conflict between the rights of an individual and the community's interest in protection of the rights of all members of that community. The Supreme Court of the United States, in language quoted in the majority opinion, states:

> " * * * The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, 1891 (1949)

The rights described in the Fourth Amendment to the Constitution of the United States and in Article 1, § 4 of the Constitution of the State of Wyoming are expressed not in terms of absolute rights, but those that are protected from unreasonable infringement. A proper determination in any instance demands that the court balance the rights of the individual and the corporate interests of all its citizens. *Richardson v. Snow*, 340 F.Supp. 1261 (D. Md.1972); *House v. Ane*, Haw., 538 P.2d 320 (1975); *State v. Davis*, 50 N.J. 16, 231 A.2d 793 (1967).[2]

The police power, which is classically exercised in an arrest, is founded in the concept which we call "sovereignty." The right of the government to enact and enforce laws for the health, safety, comfort, moral and general welfare of the people is an indispensable, essential attribute of sovereignty. *State v. Langley*, 53 Wyo. 332, 84 P.2d 767 (1938). In fact the police power may be viewed as the essence of, rather than an attribute of, sovereignty. 16 Am.Jur.2d, *Constitutional Law*, § 259, p. 510 (1964). Under our concept of government sovereignty has its source in and represents a grant from the people who are governed. The Declaration of Independence says:

> " * * * That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, * * *."[3]

The sovereignty of our government then is that which is ceded to it by its citizens in diminution of their individual sovereignty. That which is granted is dedicated to the interests of all the citizens, and must be assumed to have been granted in exchange for the same concession on the part of all others. If such a concept of government is to work it is impossible for the individually retained sovereignty, even though rec-

---

2. In *State v. Davis*, supra, at p. 796, Chief Justice Weintraub, speaking for a unanimous court said:

"Since the Fourth Amendment speaks, not in terms that are absolute, but rather of unreasonableness, it necessarily calls for a continuing reconciliation of competing values. Pre-eminent in the galaxy of values is the right of the individual to live free from criminal attack in his home, his work, and the streets. Government is established to that end, as the preamble to the Constitution of the United States reveals and our State Constitution, Art. I, ¶ 2, expressly says. We want the citizen to fore-

go arms on the strength of that assurance. If the Fourth Amendment is read to frustrate effective law enforcement, government will fail in its primary mission, its promise that the individual shall be secure from attack upon his person and his things."

3. The rights thus claimed to be secured are described in the preceding sentence of the Declaration of Independence:
"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. * * * "

ognized as constitutionally protected individual rights, to be absolute.

The resolution of any conflict that occurs between the individual rights and the police power will depend on whether in the balancing process emphasis is to be given to the rights retained by the individual or whether emphasis is to be given to the rights which have been ceded for the interests of all. The majority choose to emphasize the retained rights of the plaintiff in this instance while I contend that the balancing process in this instance requires that emphasis be given to the rights ceded to the community. The concern of our government with the protection of individual rights has been significant to its stability and success. The confidence of our citizens in their government is enhanced by the sure knowledge that the government shall not transgress those rights which represent their retained sovereignty. But this great principle presents only one facet of the complexities of our social order. Among the "blessings of liberty"[4] and our "* * * liberties,"[5] is the right to be free from the criminal acts of others. The great documents that serve as the cornerstones for our liberties are unduly limited if they are read as relating only to governmental action and not to individual conduct. The retained rights of each of us, and the value of their protection from governmental intrusion, are of little worth if they can be seized without due process of law by another individual who then unduly is shielded from responsibility by unnecessarily honoring his individual rights.

Courts must examine the issues presented to them in the context of the needs of all the citizens whom they serve. As Chief Justice Blume once said, referring to a claimed right: "* * * It is not he alone whom we must consider. We must consider society as well. * * *" *State*

*v. Riggle,* 76 Wyo. 63, 66, 300 P.2d 567, 568 (1956), on petition for rehearing. The people of this land suffer more from crime than they ever have before and more than the citizens of any other country of the world. They have an urgent need to be free from the impact of crime in their lives. The wisdom of any judicial decision which has the effect of inhibiting the efforts of those charged with the enforcement of law on behalf of all of us must be questioned. We need to examine critically the recent history of our courts during which the individual sovereignty (the retained rights) has been emphasized, and we need to ask whether we are not moving perilously closer to the point at which the rights of all of us, which we hold so dear, are sacrificed in the interest of the protection of each of us. The preservation of our rights to life, liberty, property and the pursuit of happiness from the individual assaults of others is a fundamental function of government, and that government which fails to afford an adequate measure of protection for its citizens from the criminal acts of others well may have forfeited its right to continue to govern.[6]

It is this need for balancing the interests of the individual and the interests of all, including that individual, that the majority opinion fails to recognize and therefore ignores. It is not a question of "him" and "them"; it is not a question of the individual's rights as opposed to the rights of others; it is a question of "me" and "us"; it is a question of the retained rights of the individual as opposed to his other rights which he shares with all. Speaking to the court imposed sanction of the exclusionary rule, Chief Justice Weintraub of New Jersey spelled it out in this way:

"* * * We should be mindful that while the judge-made sanction supports the right of the individual to be free from wrongful invasion by the State, it

---

4. Preamble to the Constitution of the United States of America.

5. Preamble to the Constitution of the State of Wyoming.

6. *State v. Davis,* 50 N.J. 16, 231 A.2d 793 (1967).

tends to deny him protection from grievous invasion by the criminal. For unless we can assume that offenders set free by suppression of patent proof of their guilt will not resume a criminal course, we must recognize that the pain of the sanction of suppression will be felt, not by some abstraction called the 'police' or 'society,' but by tomorrow's victims, by the innocent who more likely than not will be the poor, the most exposed and the least protected among us. Nor can we fail to note that while the sanction supports the high value inherent in freedom from unwarranted search, yet in another aspect it works against public morality because the suppression of the truth must tend to breed contempt for the long arm of the law. Such are the stakes, and it is in their light that the unreasonableness of a search must be measured." *State v. Davis,* 50 N.J. 16, 231 A.2d 793, 796 (1967).

The statement can be read as equally applicable to the reasonableness of an arrest.

As this balancing process is applied, the rights of the individual and the rights of the community may have different weights at different stages in the exercise of the police power. The closer we approach the moment of truth found in a judicial determination of guilt which will have the force and effect of permanently depriving an individual of his life, his liberty, or his property, the more heavily the scales of justice must be weighed in favor of the individual rights. At those stages of the law enforcement process which are temporary in effect and more remote from that moment of truth, the more heavily the scales may be weighed in favor of the community interest. This is the reason for the difference between the quantum of factual information necessary to convict (beyond a reasonable doubt) and that which is necessary to constitute probable cause as the essential processes of law enforcement are applied to the resolution of apparent violations of law. An arrest such as that complained of here is remote from that moment of truth

and temporary in nature. Consequently, in this instance, the conflict of opposing rights properly is resolved in that spirit found in the decision of the district court, which manifests concern for the rights of all the people.

The majority opinion fails to distinguish the information which is sufficient for probable cause from the quantum of evidence necessary to convict. This distinction is honored by recitation, but not by application. It was honored by the district court which correctly concluded that here probable cause was present in the constitutional context, and for that reason the arrest of the plaintiff by the police officers on the ground that a crime was being committed by her in their presence was justified as a matter of law. In relying upon *Mulligan v. State,* Wyo., 513 P.2d 180 (1973), the majority opinion perforce utilizes the reasonable doubt standard in resolving a probable cause question. *Valerio v. State,* Wyo., 527 P.2d 154 (1974), which distinguishes *Mulligan,* and limits it even in a context of proof beyond a reasonable doubt unfortunately is ignored. The following language taken from the majority opinion contains the specific manifestation of this erroneous approach:

> "It would seem axiomatic that criminal probable cause is the cause which logically leads to a conclusion that *the person to be arrested* is the one who had committed or was engaged in the commission of the crime."

This describes a conclusion of guilt which a police officer is not permitted to make in the performance of his role in our criminal justice system. A correct statement of the principle is that criminal probable cause is the cause which reasonably leads to a conclusion that the person to be arrested *may be* the one who committed or was engaged in the commission of the crime. The district judge in this case correctly made the distinction and applied it, and his judgment should be affirmed.

The majority opinion cites cases which are distinguishable for the proposition that

mere presence in the vicinity where a crime has been or is being committed does not constitute probable cause in the constitutional context. More persuasive are two cases from the Supreme Court of Colorado which reach a practical and realistic result. In *People v. Renfrow,* 172 Colo. 399, 473 P.2d 957 (1970), the court held that the discovery of stolen goods in a dwelling house by police officers legitimately on the premises furnished probable cause for the officers to arrest the *occupants* of the house. In *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965), the court held that Gonzales' *presence* in a room where he was watching another individual (who was the primary object of the police investigation) roll marijuana cigarettes, coupled with the knowledge of the officers that the other individual was involved in marijuana traffic, established probable cause for Gonzales' arrest. In our neighboring state of Colorado the police officers in the introductory, illustrative, hypothetical factual situation would promptly and logically arrest all six poker players. They would escort them to police headquarters where at least four and possibly five of them would be eliminated as suspects. They would be released, but they would not be able to claim that they had been the victims of an unlawful arrest.

The Supreme Court of the United States would reach the same conclusion. In *Ker v. State of California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), police officers lawfully entered the Ker apartment based upon information giving them probable cause to arrest George Ker for possession of marijuana. The court held that probable cause for the arrest of the petitioner, Diane Ker, was not present when the officers entered the apartment to arrest her husband, but was present at the time of her arrest. The court there, said at 374 U.S. 36, 83 S.Ct. 1631, 10 L.Ed.2d 740:

" * * * Upon their entry and announcement of their identity, the officers were met not only by George Ker but also by Diane Ker, who was emerging from the kitchen. Officer Berman immediately walked to the doorway from which she emerged and, without entering, observed the brick-shaped package of marijuana in plain view. Even assuming that her presence in a small room with the contraband in a prominent position on the kitchen sink would not alone establish a reasonable ground for the officers' belief that she was in joint possession with her husband, that fact was accompanied by the officers' information that Ker had been using his apartment as a base of operations for his narcotics activities. Therefore, we cannot say that at the time of her arrest there were not sufficient grounds for a reasonable belief that Diane Ker, as well as her husband, was committing the offense of possession of marijuana in the presence of the officers."

In this case Susan Rodarte was present in a pickup truck in which marijuana was discovered, and she was present with an individual known by the officers to have been charged previously with selling such substances to minors. It is not reasonable for the majority to require the officers, under those circumstances, to conclude for purposes of probable cause only that the marijuana must have been the property of Skorcz. It was equally possible and reasonably probable that Skorcz already had made a sale of this marijuana to one or more of the other occupants of the pickup truck. This court in an earlier case has accepted the concept that such substances may be jointly possessed by more than one person. *Valerio v. State,* supra.

As the Supreme Court of the United States has said in *Brinegar v. United States,* supra, at 338 U.S. 175, 69 S.Ct. 1311, 93 L.Ed. 1890:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof

is accordingly correlative to what must be proved."

The thrust of the majority opinion is to require an officer in any situation in which an arrest is to be made to eliminate factual and practical probabilities that are present in favor of selecting only the correct (in the context of guilt) probability.

In attempting to describe probable cause practically all courts say that it means less than the evidence which would justify conviction of the crime but that it is also more than bare suspicion. E. g., *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1959); *Brinegar v. United States*, supra; *State v. Vaughn*, 12 Ariz. App. 442, 471 P.2d 744 (1970); *State v. Kasabucki*, 52 N.J. 110, 244 A.2d 101 (1968); *State v. Davis*, supra; *Powe v. State*, Miss., 235 So.2d 920 (1970); *Commonwealth v. Gilmore*, 447 Pa. 21, 288 A. 2d 757 (1972); and *State v. Mannhalt*, 1 Wash.App. 598, 462 P.2d 970 (1969). The trial judge in this instance recognized and correctly applied this distinction. According to *Mulligan v. State*, supra, there was not sufficient evidence to convict. On the other hand, the officers in this instance had more than a mere suspicion. As a concrete example, if the plaintiff had been arrested simply because she was in Skorcz' vehicle that would have been an arrest based upon mere suspicion. The presence of the baggies of marijuana, her presence in the vehicle coupled with that, and the knowledge of Skorcz' prior involvement in the unlawful distribution of controlled substances, is more than mere suspicion and constitutes probable cause.

The majority relies upon statements of the arresting officers that they "suspected" a violation of the law, and in effect treats those statements in their testimony as admissions that only suspicion not probable cause was present here. While the different nuances and the number of definitive descriptions manifest how difficult it is to capture concretely the concept of probable cause, the Supreme Court of California may have accomplished this as well as it is possible to do. In a leading case that court said:

"* * * 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. 'Reasonable or probable cause' may exist although there may be some room for doubt. * * *" *People v. Nagle*, 25 Cal.2d 216, 153 P.2d 344, 347 (1944).

In *Bompensiero v. Superior Court*, 44 Cal. 2d 178, 281 P.2d 250, 254 (1955), the following language appears:

"Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. People v. Nagle, 25 Cal.2d 216, 222, 153 P.2d 344. An indictment will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. Lorenson v. Superior Court, 35 Cal.2d 49, 56, 59, 216 P.2d 859; cf. Greenberg v. Superior Court, 19 Cal.2d 319, 322, 121 P.2d 713."

Other courts encompass the word "suspicion" in their definitions of probable cause, and it is unnecessarily strict to charge these police officers with confessing the absence of probable cause simply because they used the same word that is used by the courts to describe the grounds for their arrest of the plaintiff. E.g., *State v. Vaughn*, supra; *Russell v. State*, Fla.App., 266 So.2d 92 (1972); *Peterson v. State*, 250 Ind. 269, 234 N.E.2d 488 (1968); *State v. Harris*, 265 Minn. 260, 121 N.W.2d 327 (1963), cert. den. 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963); *State v. Kasabucki*, supra; *Barfield v. Marron*, 222 La. 210, 62 So.2d 276 (1952); *Henning v. Miller*, 44 Wyo. 114, 8 P.2d 825 (1932), reh. den., 44 Wyo. 141, 14 P.2d 437 (1932). In *State v. Davis*, supra, the point is made in footnote 3 at 231 A.2d 797 that the word "suspi-

cion" is equivalent to "belief" in the probable cause standard and that in effect the words are used interchangeably.[7] Considering this style of definition of probable cause and the Colorado cases of *Gonzales v. People,* supra, and *People v. Renfrow* supra, and the United States Supreme Court opinion in *Ker v. California,* supra, any conscientious magistrate would have issued a warrant for the plaintiff's arrest based upon the information that she was present in the pickup truck owned by a person previously charged with the sale of marijuana to minors, who also was present, and marijuana was discovered in the pickup truck. While police officers may, as the majority recites, relying upon *Lofton v. State,* Wyo., 489 P.2d 1169 (1971), be held to the same standard as a magistrate, the other language in, and the entire tenor of, the majority opinion and its reliance upon *Mulligan v. State,* supra, demonstrate that in this instance the officers are held to a higher standard than that of a magistrate. In effect they have been instructed that to justify an arrest they must reach a correct conclusion as to the identity of the guilty party based upon facts which implicate several persons but do not point unerringly to any person. The correct rule is that an arrest is justified by any reasonable possibility which may be inferred from facts known to the officers; they then have probable cause to arrest, and should not be required to defend a civil action for damages based upon a claim of unlawful arrest.

Since, as I view this case, probable cause was present in the constitutional context, I would not reach the distinction between probable cause in a constitutional context in a criminal case and the different and less stringent standard which a police officer as a defendant may assert in defense of a charge of wrongful arrest in a civil case. I recognize that the authorities do make such a distinction. My objection to the majority opinion's treatment of this proposition, however, is that it seems to inject a notion of negligence into an area of the law in which negligence is not an appropriate criteria. I am unable to understand exactly what is intended by the language of the majority opinion:

"In a civil case the rules of tort law are applicable—that is—since good-faith probable cause is ascertainable within the philosophy of negligence, and since negligence becomes a question of law only when the minds of reasonable men can draw but one inference which points unerringly to such negligence (*Ries v. Cheyenne Cab & Transfer Company,* 53 Wyo. 104, 79 P.2d 468), the presence or absence of probable cause for arrest and false imprisonment must usually be left for resolution as a question of fact for the fact-finder."

If it really means what it says, it is erroneous. This language requires the submission to a jury of the question of the reasonableness of the officers' belief that probable cause was present simply because in an ordinary negligence case the usual

---

7. Restatement (Second) of Torts, § 121(b), p. 204 (1965), in discussing those situations in which a peace officer is privileged to arrest another without a warrant, says:

"if, although no act or omission constituting a felony has been committed, the officer reasonably suspects that such an act or omission has been committed and that the other has committed it, * * *."

The term "reasonably suspects" in the context of the Restatement (Second) of Torts has the following meaning:

" * * * In order that the actor may 'reasonably suspect' the other of having committed acts which constitute a felony

which has in fact been committed, it is not necessary that the actor shall believe that the other is guilty of the felony. It is enough that the circumstances which the actor knows or reasonably believes to exist are such as to create a reasonable belief that there is a likelihood that the other has committed the felony. In such case, the public interest in the punishment of a felon requires the other's arrest for the purpose of securing his custody pending investigation." Restatement (Second) of Torts, § 119, Comment, (j), at p. 197 (1965).

standard compares the conduct of the defendant to that of a reasonable man. The probable cause issue is vastly different, however. The resolution of an instance such as this depends upon the reasonableness only of inferences which may be drawn from the independent and uncontrolled conduct of others. Whether probable cause is or is not present is entirely unrelated to the conduct of the police officer. It may be present however he conducts himself, or conversely, it may be absent even though the conduct of the officer is most circumspect. It is an objective standard which requires an even-handed application. *Klingler v. United States*, 409 F.2d 299, 304 (8th Cir. 1969), cert. den. 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); and *State v. Vaughn*, supra. It is perhaps because of this attribute of the standard of probable cause more than for any other reason that the question is best resolved, even under the less stringent standard presented in a civil tort case, by a court, which uniformly handles the question in the constitutional criminal context.

The general rule where the facts, as in this case, are undisputed is that the question of probable cause is one of law for the court. *Banish v. Locks*, 414 F.2d 638 (7th Cir. 1969); *J. S. Dillon & Sons Stores Company v. Carrington*, 169 Colo. 242, 455 P.2d 201 (1969); *Great Atlantic & Pacific Tea Co. v. Paul*, 256 Md. 643, 261 A.2d 731 (1970); *Stienbaugh v. Payless Drug Store, Inc.*, 75 N.M. 118, 401 P.2d 104 (1965); see generally, 35 C.J.S. *False Imprisonment* § 59, p. 761 (1960). Cf., Annot., 87 A.L.R.2d 183, 188 (1963). This is the rule espoused by this Court in actions for malicious prosecution which are closely analogous for purposes of resolving this issue. *Huber v. Thomas*, 45 Wyo. 440, 19 P.2d 1042 (1933); and *Henning v. Miller*, supra. The district court's action in granting summary judgment was consistent with this general rule and with the application of Rule 56, W.R.C.P., to cases in which there is no dispute as to the facts.

*Guggenmos v. Tom Searl-Frank McCue, Inc.*, Wyo., 481 P.2d 48 (1971); *Bon v. Lemp*, Wyo., 444 P.2d 333 (1968); *Fugate v. Mayor and City Council of Town of Buffalo*, Wyo., 348 P.2d 76 (1959). Even in cases not involving a motion for summary judgment the general disposition of the courts is to treat this question as one of law. E. g., *Cambist Films, Inc. v. Duggan*, 475 F.2d 887 (3rd Cir. 1973); *Salvati v. Dale*, 364 F.Supp. 691 (W.D.Pa.1973); *Coverstone v. Davies*, 38 Cal.2d 315, 239 P.2d 876 (1952), cert. den. 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952); *Beyer v. Young*, 32 Colo.App. 273, 513 P.2d 1086 (1973); *Lundeen v. Renteria*, Minn., 224 N.W.2d 132 (1974). It is only in this way that the courts meet their responsibility of balancing individual rights and the rights of everyone in the context of probable cause. To delegate this sensitive task to our juries, able as they are, represents an evasion of the responsibility of the courts.

I cannot help but read into the opinion of the majority overtones to the effect that the determination of the existence of probable cause may be premised upon the jury's attitude as to the negligence or nonnegligence of the officer in conducting his investigation. If that is what is intended, it is not correct because of the fact that probable cause is present or is not present entirely independent of any conduct of the police officer. I must protest the suggestion that the negligence of the officers in this case may result in a jury determination that there is no probable cause to arrest. This is a marked deviation from the usual standard.

Also in this context it is illogical to rely upon any failure of the arresting officers to make inquiry of Susan Rodarte or the others in the pickup in reaching the conclusion that there is some aspect of negligence in the officers' conduct which would justify a jury in concluding that the arrest was made without probable cause. By relying upon any failure to interrogate the persons arrested the majority opinion has

structured for police officers in Wyoming a classic example of Hobson's Choice.[8] The officers would be subject to criticism, and under other decisions of this court would make unavailable for use in any criminal trial incriminating admissions made by an individual contacted under such circumstances, if they undertook to make any meaningful inquiry without advising the persons questioned of their rights in accordance with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1968). While I do not agree with the recent decision of this court in *Jerskey v. State*, Wyo., 546 P.2d 173 (1976), certainly that decision would demand that the officers furnish the warnings required by *Miranda v. Arizona*, supra. The Supreme Court of the United States, however, in the opinion in *Miranda v. Arizona*, supra, assumes that these warnings need be given only in connection with a custodial interrogation. By giving the warnings required by *Miranda v. Arizona*, in order to pursue any meaningful interrogation, the officer would be charged with having effected the arrest which the majority says he cannot make without the interrogation. I know of no way that the officer can comply with that requirement.

Arrest is not an issue in this case. For purposes of the motion for summary judgment and this hearing, the appellants freely admit that Susan Rodarte in fact was arrested. Under these circumstances the discussion in the majority opinion about what constitutes an arrest is dictum, and most dangerous and completely inapplicable dictum having no place whatsoever in this case. This case presents one example of an arrest, but beyond that the broad examples suggested by the majority opinion encounter the hazard which always is associated with an advisory opinion. Essentially that hazard is that it is not possible to anticipate all of the multitude of factual situations which may present themselves. It is inadvisable to attempt to define standards

applicable to all situations such as the majority attempts to do here. The ad hoc approach which must be applied to issues such as this leaves a feeling of dissatisfaction, but that approach is necessary. Every case must be decided upon its own facts and circumstances.

Finally, I must object to the chilling effect that this decision must have upon those activities of law enforcement officers which, by virtue of our delegation of sovereignty, they exercise in our behalf. The majority opinion does recognize the impropriety of an injunction broadly directed at law enforcement officers with respect to the performance of their assigned functions. The effect of a decision must, however, be consistent with the language that is used and that consistency is not present here because this opinion structures a psychological injunction directed at police officers which they cannot ignore. Our law enforcement officers in this state have been told that given the fact of a crime being committed in their presence, but also given several equally logical suspects, they cannot arrest anyone but the guilty party. They must leave the corpse on the floor and the six poker players in the room. The penalty for any more effective approach is clear. Their assets and savings, and their future livelihood, with which they seek to benefit their families, will be subject to appropriation by the person who claims to have been wronged. In light of this case the natural reluctance they must feel to effect arrests is as debilitating to the proper performance of their functions as any direct injunction could be. Courts in other contexts have clearly recognized the chilling effect of the potential of not only damages, but of litigation and its associated expense, on the way we perform whatever role we may pursue in this society. See e.g., *Time, Inc. v. Hill*, 385 U.S. 374, 389, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965);

8. "Where to elect there is but one, 'Tis Hobson's Choice—take that or none." Thom-as Ward, England's Reformation [1630] Chapter IV.

*New York Times Co. v. Sullivan,* 376 U.S. 254, 278–279, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Washington Post Company v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965, 968 (1966), cert. den. 385 U.S. 1011, 87 S. Ct. 708, 17 L.Ed.2d 548 (1967).

Under these circumstances our police officers must be reluctant to effect arrests (*Coverstone v. Davies,* supra), and that reluctance means that the lives, liberty and property of all of us are less safe than before.[9] We must not succumb to any suggestion that the majority result is substantially innocuous because all that it really does is to return the case to the district court to be tried to a jury so that the jury may determine whether there was probable cause for Susan Rodarte to be arrested or, perhaps drawing the issue more finely, whether it was reasonable for the police officers to believe that there was probable cause. The Court has gone one step further in the process of sacrificing those rights which we claim for all in favor of a right claimed by one. Yet, at this time in the history of our country, the demand is clear that some greater priority must be given to the rights of all of us.

For the foregoing reasons I would hold that the summary judgment granted by the district court should be affirmed in all respects.

RAPER, Justice (dissenting).

I wholeheartedly join with Justice Thomas in his keenly perceptive dissent. Under the glare of the majority opinion, I feel sorry for the law enforcement officer in Wyoming and the public as well though the majority decision will probably be to the delight of the litigious, those traveling on the fringe of lawlessness, and the criminal. A step backward has been taken. I

have the greatest of respect for the views of my Brothers on the majority though I thoroughly disagree with them here.

The majority in their citation of *Pierson v. Ray,* 1967, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, overlook the real underlying philosophy of and stated in that case:

"The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. Restatement, Second, Torts § 121 (1965); 1 Harper & James, The Law of Torts § 3.18, at 277–278 (1956); Ward v. Fidelity & Deposit Co. of Maryland, 179 F.2d 327 (CA8th Cir. 1950). *A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.* * * *" (Emphasis added.)

The true concept of the defense of good faith and probable cause is captured in the concurring opinion of Judge Lumbard in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 2 Cir. 1972, 456 F.2d 1339:

"Ordinarily when a suit of this type is brought a court will already have determined that there was no probable cause for the arrest and search complained of. Nevertheless the agent has a complete defense if he can convince the trier of

---

9. "These clauses state the privilege of a peace officer in making an arrest which is additional to that of a private person. The additional privilege is given because the peace officer has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired

unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes." Restatement (Second) of Torts, § 121, Comment g., entitled Comment on Clauses (b) and (c), at p. 206 (1965).

the fact that he acted in good faith and that it was reasonable for him to have believed that the arrest and search were lawful. Thus there are two standards to be considered. The first is what constitutes reasonableness for purposes of defining probable cause under the fourth amendment for the protection of citizens against governmental overreaching. The other standard is the less stringent reasonable man standard of the tort action against government agents. *This second and lesser standard is appropriate because, in many cases, federal officers cannot be expected to predict what federal judges frequently have considerable difficulty in deciding and about which they frequently differ among themselves. It would be contrary to the public interest if federal officers were held to a probable cause standard as in many cases they would fail to act for fear of guessing wrong. Consequently the law ought to, and does, protect government agents if they act in good faith and with a reasonable belief in the validity of the arrest and search.*" (Emphasis added.)

In *Hill v. Rowland,* 4 Cir. 1973, 474 F.2d 1374, the plaintiff in a civil action sought damages against police officers of the City of Charlotte, North Carolina, for a warrantless arrest. The court considered the problem and quoted at length, with approval, from *Richardson v. Snow,* D.Md.1972, 340 F.Supp. 1261, as follows:

" ' * * * As stated in Whirl v. Kern, 407 F.2d 781 at 790 (5 Cir. 1969), "An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation." *To require the police officer, under penalty of personal liability for damages if he is in error, to make on-the-spot complex and intricate legal determinations of the existence or absence of probable cause under the Fourth and Fourteenth Amendments when the courts, acting in a more leisurely and relaxed atmosphere, have difficulty in making these decisions is to place the policeman in just such a posi-*

*tion of acting at his peril as was declared to be intolerable* in Pierson v. Ray, *supra,* 386 U.S. at 555, 87 S.Ct. at 1218. It is no answer to this intolerable burden to cite cases such as Beck v. Ohio, 379 U.S. 89, at 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), where a subjective good-faith test for actions of the policemen in an arrest was rejected since those cases deal with constitutional standards applicable to the admission of evidence in the trial of a criminal case rather than to the question of civil liability of a policeman who, in good faith and with a reasonable belief in the legality of his acts, has attempted to perform his duty to protect society. Such a distinction in this court's view is entirely compatible with the balancing of the interest of society in attempting to protect itself from the effects of criminal behavior and of the interests of the individual in the enjoyment of his constitutional rights.' 340 F.Supp. at 1266." (Emphasis added.)

I am convinced that as a matter of law, as the trial judge ruled, the officers here acted in complete good faith—there is no showing whatsoever of bad faith—with a reasonable belief in the validity of the arrest. When the officers went to Skorcz's pickup they were approaching the vehicle lawfully to arrest a person for whom a warrant was outstanding for a narcotics violation. In arresting that individual, they found three other persons, with the plaintiff seated next to Skorcz and under her feet, a large bag of marijuana. Another bag of marijuana was in plain sight between Skorcz, who was sitting next to plaintiff, and the right-hand door. It was reasonable to believe that since Skorcz was being arrested for delivery of marijuana to two young juveniles at the junior college and a narcotics violation warrant from Jackson was outstanding, a similar transaction had taken place between Skorcz and the 18-year old plaintiff. It was reasonable that no body-search of plaintiff be made at the time in the absence of a po-

licewoman, and that the parking lot of Taco John's late at night was no place to interview the occupants of that vehicle. It was likewise reasonable to handcuff three persons surrounded by marijuana, with unknown propensities and in the interest of protecting all concerned to take that action while removing the suspects to the city police station. It would be further most reasonable because the officer driving the police car had had a previous experience with plaintiff's female friend, another occupant of the pickup, "fighting, kicking, trying to escape." The plaintiff was held only 15 or 20 minutes; she was not abused in any fashion. An off-duty policewoman was brought in specially to conduct the search of plaintiff's person. It was the duty of those officers to take the sensible and reasonable measures they did. To not do as they did would have been a dereliction of duty. Those circumstances with which they were confronted had all the anatomy of a first-class controlled substances violation.

Even the stricter rule applied in a criminal case recognizes that in dealing with probable cause, as the very term implies, we deal only with probabilities. They are not technical but practical considerations of everyday life on which reasonable men, not legal technicians act. This is the way successful prosecutions are made. To have passed up such an opportunity would be like walking past a lost hundred dollar bill and not picking it up because it might be counterfeit. Law enforcement officials must not be shackled by the fear that they will be sued and forced to an expensive jury trial for every move they make in enforcing the law. The citizen is adequately protected by the test of reasonableness, which a judge was and is qualified to rule on under these undisputed circumstances.

I would have affirmed in every respect.[1]

---

1. I concur in those parts of the majority opinion relating to the "Riverton Police Reserves," affirming the trial court.